WILLIAM E. ARNOLD CO. *v.* CARPENTERS DISTRICT COUNCIL OF JACKSONVILLE AND VICINITY ET AL.

No. 73–466.   Argued March 20, 1974—Decided May 20, 1974

BRENNAN, J., delivered the opinion for a unanimous Court.

*John Paul Jones* argued the cause for petitioner. With him on the brief were *Daniel R. Coffman, Jr.,* and *Allan P. Clark.*

*Joseph S. Farley, Jr.,* argued the cause and filed a brief for respondents.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The Florida Supreme Court held that the Florida District Court of Appeal erred in refusing to issue a writ of prohibition to restrain the Circuit Court for Duval County from exercising its jurisdiction over a suit within the purview of § 301 of the Labor Management Relations Act (LMRA).[1] The suit sought to enjoin respondent unions' breach of a no-strike clause contained in a

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Bork, Peter G. Nash, John S. Irving, Patrick Hardin,* and *Norton J. Come* for the United States, and by *Gerard C. Smetana, Jerry Kronenberg,* and *Milton Smith* for the Chamber of Commerce of the United States.

[1] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 61 Stat. 156, 29 U. S. C. § 185 (a).

collective-bargaining agreement, which breach arguably is also an unfair labor practice under the Act. The State Supreme Court stated: "It is unquestionable that state courts do have jurisdiction to enforce a collective-bargaining agreement and to enjoin a strike in violation of a 'no-strike' clause contained therein, but not when the strike is also arguably an unfair labor practice prohibited by federal law." 279 So. 2d 300, 302 (1973). We granted certiorari to decide whether the holding of the Florida Supreme Court was consistent with decisions of this Court, including *Teamsters Local* v. *Lucas Flour Co.*, 369 U. S. 95 (1962), and *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962). 414 U. S. 1063 (1973). We reverse.

Article VI of a collective-bargaining agreement between petitioner, William E. Arnold Co., and respondents, Carpenters District Council of Jacksonville and Vicinity and its affiliate, Local 627 (Carpenters), provides:

> "There shall be no work stoppage, slowdown, work cessation or strike because of a Jurisdictional Dispute. A mutually agreeable settlement, or joint decision of the International Unions involved, or decision or interpretation of the National Joint Board for the Settlement of Jurisdictional Disputes (or Hearing Panel) shall be binding and all parties agree to accept such decision or interpretation."

In 1971, during the construction of the Jacksonville General Hospital, one of Arnold's subcontractors assigned work claimed by the Carpenters to the Wood, Wire and Metal Lathers International Union, AFL–CIO, Local 59. The Carpenters struck Arnold to force reassignment of the work to their members. Arnold thereupon brought this suit in the Circuit Court of Duval County to enjoin the Carpenters from violating the provisions of

Art. VI and obtained a temporary restraining order prohibiting the strike. The Carpenters then sought a writ of prohibition from a Florida District Court of Appeal, contending that the Circuit Court lacked jurisdiction to order injunctive relief because the alleged breach of the no-strike clause was also arguably an unfair labor practice under § 8 (b)(4)(i)(D) of the National Labor Relations Act (NLRA), 29 U. S. C. § 158 (b)(4) (i)(D),[2] and therefore fell within the exclusive jurisdiction of the National Labor Relations Board (Board). The District Court of Appeal denied the writ of prohibition and, as previously mentioned, the Supreme Court of Florida reversed.

When an activity is either arguably protected by § 7 or arguably prohibited by § 8 of the NLRA, the preemption doctrine developed in *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959), and its progeny, teaches that ordinarily "the States as well as the federal courts must defer to the exclusive competence

---

[2] Section 8 (b)(4) makes it an unfair labor practice for a labor organization or its agents:

"(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise, handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

.         .         .         .         .

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work . . . ."

of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.*, at 245. When, however, the activity in question also constitutes a breach of a collective-bargaining agreement, the Board's authority "is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *Smith* v. *Evening News Assn.*, 371 U. S., at 197. This exception was explicitly reaffirmed in *Motor Coach Employees* v. *Lockridge*, 403 U. S. 274, 297–298 (1971). It was fashioned because the history of § 301 reveals that "Congress deliberately chose to leave the enforcement of collective agreements 'to the usual processes of the law,'" *Dowd Box Co.* v. *Courtney*, 368 U. S. 502, 513 (1962). Thus, we have said that the *Garmon* doctrine is "not relevant" to actions within the purview of § 301, *Teamsters Local* v. *Lucas Flour Co.*, 369 U. S., at 101 n. 9, which may be brought in either state or federal courts, *Dowd Box Co.* v. *Courtney, supra,* at 506.

Indeed, Board policy is to refrain from exercising jurisdiction in respect of disputed conduct arguably both an unfair labor practice and a contract violation when, as in this case, the parties have voluntarily established by contract a binding settlement procedure. See, *e. g., The Associated Press,* 199 N. L. R. B. 1110 (1972); *Eastman Broadcasting Co.,* 199 N. L. R. B. 434 (1972); *Laborers Local 423,* 199 N. L. R. B. 450 (1972); *Collyer Insulated Wire,* 192 N. L. R. B. 837 (1971). The Board said in *Collyer,* "an industrial relations dispute may involve conduct which, at least arguably, may contravene both the collective agreement and our statute. When the parties have contractually committed themselves to mutually agreeable procedures for resolving their disputes during the period of the contract, we are of the view that those procedures should be afforded full opportunity to

function. . . . We believe it to be consistent with the fundamental objectives of Federal law to require the parties . . . to honor their contractual obligations rather than, by casting [their] dispute in statutory terms, to ignore their agreed-upon procedures." *Id.,* at 842–843. The Board's position harmonizes with Congress' articulated concern that, "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ." § 203 (d) of the LMRA, 29 U. S. C. § 173 (d).

Furthermore, when the particular contract violation also involves an arguable violation of § 8 (b)(4)(i)(D) of the NLRA concerning jurisdictional disputes, as in this case, the Board has recognized added policy justifications for deferring to the contractual dispute settlement mechanism agreed upon by the parties. Section 10 (k) of the NLRA, 29 U. S. C. § 160 (k), establishes a special procedure for the Board's resolution of charges involving jurisdictional disputes:

> "Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158 (b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, *unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."* (Emphasis added.)

Thus, § 10 (k) "not only tolerates but actively encourages voluntary settlements of work assignment controversies between unions . . . ." *Carey* v. *Westinghouse Electric Corp.,* 375 U. S. 261, 266 (1964). Recognizing Congress' preference for voluntary settlement of jurisdictional disputes, the Board has declined jurisdiction in § 10 (k) cases, commenting that, "[i]f we retained jurisdiction . . . , the statutory purpose to encourage the voluntary settlement of jurisdictional disputes would be frustrated in that a party receiving an adverse decision from the agreed-upon tribunal for settling its jurisdictional dispute would be encouraged to ignore such decision, lapse into noncompliance, and then come before this Board for a more favorable resolution of the dispute." *Laborers Local 423,* 199 N. L. R. B., at 451.

The Board's practice and policy of declining to exercise its concurrent jurisdiction over arguably unfair labor practices which also violate provisions of collective-bargaining agreements for voluntary adjustment of disputes highlight the congressional purpose that § 301 suits in state and federal courts should be the primary means for "promoting collective bargaining that [ends] with agreements not to strike." *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, 453 (1957). The assurance of swift and effective judicial relief provides incentive to eschew economic weapons in favor of binding grievance procedures and no-strike clauses.

The Carpenters contend, however, that state court jurisdiction over collective-bargaining disputes should be limited to claims for damages, rather than injunctive relief. See Brief for Respondents 7–9. We disagree. To be sure, *Lucas, Smith,* and *Lockridge,* all *supra,* involved only damages claims, but nothing in the opinions in those cases remotely suggests that state court jurisdiction should turn upon the particular type of relief sought.

Indeed, *Avco Corp.* v. *Aero Lodge 735,* 390 U. S. 557, 561 (1968), disposes of the argument. We there said: "The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy. . . . Any error in granting or designing relief 'does not go to the jurisdiction of the court.' *Swift & Co.* v. *United States,* 276 U. S. 311, 331." Moreover, the policy reasons against extension of the *Garmon* doctrine to suits within the scope of § 301 are particularly compelling when the relief sought is specific performance of a no-strike obligation, rather than damages. What we said in *Boys Markets* v. *Clerks Union,* 398 U. S. 235, 248 (1970), is pertinent here:

> "[A] no-strike obligation, express or implied, is the *quid pro quo* for an undertaking by the employer to submit grievance disputes to the process of arbitration. See *Textile Workers Union* v. *Lincoln Mills, supra,* at 455. Any incentive for employers to enter into such an arrangement is necessarily dissipated if the principal and most expeditious method by which the no-strike obligation can be enforced is eliminated. While it is of course true, as respondent contends, that other avenues of redress, such as an action for damages, would remain open to an aggrieved employer, an award of damages after a dispute has been settled is no substitute for an immediate halt to an illegal strike. Furthermore, an action for damages prosecuted during or after a labor dispute would only tend to aggravate industrial strife and delay an early resolution of the difficulties between employer and union." (Footnotes omitted.)

See also *Gateway Coal Co.* v. *United Mine Workers,* 414 U. S. 368, 382 (1973).

Therefore, we reject the argument of Carpenters that the availability of effective equitable relief should be limited to the federal courts. We have previously expressed our agreement with Chief Justice Traynor of the California Supreme Court that "whether or not Congress could deprive state courts of the power to give such [injunctive] remedies when enforcing collective-bargaining agreements, it has not attempted to do so either in the Norris-La Guardia Act or section 301," *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal. 2d 45, 63, 315 P. 2d 322, 332 (1957). See *Boys Markets* v. *Clerks Union, supra,* at 247. Rather, the jurisdiction given federal courts under § 301 was "not to displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over contracts made by labor organizations," *Dowd Box Co.* v. *Courtney,* 368 U. S., at 511.

We do not, of course, pass upon the propriety of the injunctive relief sought in the present case. That is a question to be resolved on remand. The judgment of the Supreme Court of Florida is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*