**Leo G. KOHLS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

**United Parcel Service, Intervenor.**

**UNITED PARCEL SERVICE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

**Leo G. Kohls, Intervenor.**

**Nos. 79–1424, 79–1743.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 12, 1980.

Decided July 18, 1980.

Rehearing Denied Aug. 25, 1980.

J. Mack Swigert, Cincinnati, Ohio, with whom Martin Wald, Philadelphia, Pa., and Randolph J. Stayin, Washington, D. C., were on brief, for United Parcel Service, petitioner in No. 79–1743 and intervenor in No. 79–1424. .

Arthur L. Fox, II, Washington, D. C., for petitioner in No. 79–1424 and intervenor in No. 79–1743.

Susan L. Dolin, Atty., N. L. R. B., Washington, D. C., with whom Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Jay E. Shanklin, Atty., N. L. R. B., Washington, D. C., were on brief, for respondent.

Before McGOWAN and EDWARDS, Circuit Judges, and FRIEDMAN,* Chief Judge, Court of Claims.

Opinion for the court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

This case arises from a decision by the National Labor Relations Board (the "Board") that United Parcel Service (UPS) committed an unfair labor practice in violation of section 8(a)(1) of the National Labor Relations Act [1] (NLRA) when it fired Leo Kohls for refusing to drive a truck that he believed to be unsafe. Under the doctrine announced in *Interboro Contractors, Inc.,* 157 N.L.R.B. 1295 (1966), *enf'd,* 388 F.2d 495 (2d Cir. 1967), the Board held that since Kohls was attempting to enforce provisions of the collective bargaining agreement between UPS and Local 413, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT), he was engaged in protected concerted activity under the NLRA. The Board issued a supplemental order [2] for UPS to

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. 29 U.S.C. §§ 151–169 (1976). Section 8(a)(1) provides:

   It shall be an unfair labor practice for an employer—
      (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7].
   Section 7 provides in part:
      Employees shall have the right . . . to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .
   *Id.* at § 157.

2. The Board's original order on March 24, 1977 remanded the proceeding to the Administrative Law Judge, who had dismissed the complaint in order to defer to the arbitration procedures set forth in the collective bargaining agreement. The Board based its decision on *General*

*American Transportation Corp.,* 228 N.L.R.B. 808 (1977), which modified the Board's deferral policies enunciated in *Collyer Insulated Wire,* 192 N.L.R.B. 837 (1971). *See* Jt.App. at 13. In , *General American,* then Chairman Murphy joined with Members Fanning and Jenkins, the two long-time dissenters from *Collyer,* and rejected deferral in a case involving an 8(a)(3) discrimination unfair labor practice charge (*see* note 6, *infra*). Members Fanning and Jenkins wrote that "we believe that the Board has a statutory duty to hear and to dispose of unfair labor practices and that the Board cannot abdicate or avoid its duty by seeking to cede its jurisdiction to private tribunals." *Id.* at 808. Chairman Murphy, however, explicitly rejected this premise. Her concurrence plainly did not represent a wholesale rejection of *Collyer;* rather, Chairman Murphy merely concluded that *Collyer* deferral seemed inappropriate where individual rights under § 7 of the NLRA are at stake. *Id.* at 811. *See also Roy Robin-*

reinstate Kohls with full back pay and to cease and desist its unfair labor practices. The Board denied Kohls' motion for attorney's fees.

Kohls filed a petition in this court to review the Board's supplemental order denying him attorney's fees. UPS intervened in that proceeding. UPS filed a petition in the Sixth Circuit to review the part of the Board's supplemental order against UPS, and Kohls intervened in that proceeding. The two cases were consolidated in this court, and the Board subsequently cross-petitioned for enforcement of its supplemental order.

Since we find that, under the facts in this case, Kohls was not engaged in "concerted" activity, we conclude that UPS was not guilty of an unfair labor practice. We therefore decline to enforce the Board's decision and order in this case.

## I. BACKGROUND

Leo Kohls, who had been employed by UPS for eight years, refused to drive his assigned truck on November 12, 1975, asserting that "the brakes were not good enough for me."[3] After some attempts to

repair the brakes, supervisors for UPS ordered Kohls to drive the truck, but he still refused. Kohls was then reassigned to the car wash for the remainder of the day. On November 26, 1975, Kohls was fired by UPS pursuant to the terms of the collective bargaining agreement.[4]

On December 1, the union filed a grievance under the collective bargaining agreement on Kohls' behalf, but Kohls withdrew the grievance a week later.[5] In the meantime, on December 3, Kohls had filed a charge with the Board claiming that UPS had violated sections 8(a)(1) and 8(a)(3)[6] of the NLRA. The Board issued a complaint alleging only an 8(a)(1) violation.[7]

After a hearing, the Administrative Law Judge (ALJ) found that Kohls had asserted a contractual right when he had refused to drive what he believed to be an unsafe truck.[8] The ALJ further found that Kohls' "assertion of such rights is protected concerted activity under the Act if his claimed belief was honestly held and regardless of its correctness." Jt.App. at 23. While the ALJ expressly declined to decide whether the truck brakes were in fact unsafe, he did

---

son, Inc., 228 N.L.R.B. 828 (1977), decided the same day, in which a majority of the Board followed Collyer in a case involving a § 8(a)(5) refusal to bargain unfair labor practice charge.

A fuller discussion of the deferral issue appears under section II. 3, infra.

3. See Administrative Law Judge's Supplemental Decision at 5, Jt.App. at 20; Jt.App. at 188.

4. UPS waited until November 26 because this was the first opportunity for a union hearing, which was contractually required before UPS could discharge an employee.

5. The collective bargaining agreement provides that if an employee is not satisfied with UPS' response to his report of an unsafe vehicle, the employee "shall take the matter up with the officers of the Union who will take the matter up with the Employer." Art. XVII of the Area Agreement. Jt.App. at 37.

It is undisputed that the contract provides an exclusive procedure for resolving all grievances, which include "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement." Art. VIII of the Area Agreement. Jt.App. at 32. Unresolved grievances are to be submitted to

final and binding arbitration before a Joint Area Committee as provided in Article VIII. Jt.App. at 32–35.

6. Section 8(a)(3) provides in part that it is an unfair labor practice for an employer

by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

29 U.S.C. § 158(a)(3) (1976).

7. This case was not brought or decided under § 502 of the Labor Management Relations Act, 29 U.S.C. §§ 141–197 (1976), which provides:

nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this [Act].

Id. at § 143.

8. Article XVII of the Area Agreement between UPS and the IBT provides: "It shall not be a violation of this Agreement where employees refuse to operate such equipment unless such refusal is unjustified." Jt.App. at 36.

find that Kohls' refusal was based on "ascertainable objective evidence." *Id.* at 24. The ALJ recommended that the Board issue a cease and desist order and reinstate Kohls with full back pay. However, the ALJ recommended that the Board should deny Kohls' request for an award of attorney's fees. With only a minor modification, the Board adopted the ALJ's recommendations. UPS has petitioned for review of the Board's order finding an unfair labor practice, and Kohls has petitioned for review of the Board's denial of the request for attorney's fees.

## II. THE ALLEGED UNFAIR LABOR PRACTICE

1. *Protected "Concerted Activity" and the* Interboro *Doctrine*

■ At the core of this dispute is whether Kohls' refusal to work was concerted activity for mutual aid and protection as defined by the NLRA.[9] UPS contends that Kohls' refusal to work on November 12 was an individual action over a contract dispute and, therefore, unprotected under the Act.[10] In support of this position, UPS relies on section 10(c) of the NLRA, which states, in part, that "no order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause."[11] UPS further argues that, since Kohls was not asserting a right under section 502 (*see* note 7, *supra*), and since he was engaged in individual and not concerted activity, his sole recourse was to pursue his claims under the arbitration provisions of the collective bargaining agreement between UPS and IBT.

In rejecting UPS' position, Kohls and the Board rely on *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295 (1966), *enf'd*, 388 F.2d 495 (2d Cir. 1967), to assert that Kohls' refusal

to work was concerted activity that was protected under section 8(a)(1) of the NLRA. In *Interboro* two employees were discharged because they had complained about working conditions. Finding substantial evidence that one of the discharged workers was speaking for both, and was thus engaged in concerted activity, the Second Circuit enforced the Board's finding of an 8(a)(1) violation and ordered the reinstatement of the complaining workers. *In an alternative holding*, the court also ruled that, even absent an interest by fellow employees, an individual employee's "attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes." 388 F.2d at 500. This alternative holding, on which Kohls and the Board rely, has become known as the *Interboro* doctrine.

Several circuits have followed the lead of the Second Circuit and embraced the *Interboro* doctrine. *See NLRB v. Selwyn Shoe Mfg. Corp.*, 428 F.2d 217, 221 (8th Cir. 1970) ("rights secured by [the collective bargaining agreement], though personal to each employee, are protected rights under § 7 of the Act because the collective bargaining agreement is the result of concerted activities by the employees for their mutual aid and protection"); *NLRB v. Ben Pekin Corp.*, 452 F.2d 205, 206 (7th Cir. 1971); and *Roadway Express, Inc.*, 217 N.L.R.B. 278 (1975), *enf'd*, 532 F.2d 751 (4th Cir. 1976).

However, at least three other circuits have expressly rejected the *Interboro* doctrine as contrary to the plain language of the National Labor Relations Act. In *NLRB v. Northern Metal Co.*, 440 F.2d 881, 884 (3d Cir. 1971), the court observed that *Interboro* represented a "clear expansion of the Act's coverage, in the face of unambiguous words in the statute." The court in *Northern Metal* thus declined to follow the analysis of the Second Circuit in *Interboro* because "the Act surely does not mention

---

9. *See* note 1, *supra*.

10. UPS also contends that Kohls was fired not because of the November 12 incident, but because of his entire work record. However, we find substantial evidence in the record to sup-

port the Board's finding that Kohls was fired for his refusal to drive the truck on November 12.

11. 29 U.S.C. § 160(c) (1976).

'concerted *purposes*.'"[12] Similarly, in *NLRB v. Buddies Supermarkets, Inc.*, 481 F.2d 714 (5th Cir. 1973), the court declined to follow *Interboro* in a case where an employee was discharged for seeking better wages in his own behalf.[13] In an opinion recently handed down by the Sixth Circuit, *ARO, Inc. v. NLRB*, 596 F.2d 713, 718 (6th Cir. 1979), the court ruled that:

> For an individual claim or complaint to amount to concerted action under the Act it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement.

Given the rather clear language of sections 7 and 8(a)(1) of the NLRA, we have serious doubts about the validity of the *Interboro* doctrine. As was noted by the Third Circuit in *Northern Metal, supra*, the rationale supporting the doctrine is suspect; *Interboro* creates a legal fiction of *constructive* concerted activity in the face of statutory language that plainly protects workers who "*engage* in concerted activity" for the mutual aid and protection of other workers. *See* note 1, *supra*. Nevertheless, despite our doubts about the correctness of the *Interboro* doctrine, we need not resolve the issue here. Even if we were to assume that individual action may in some circumstances be viewed as "concerted activity" under the NLRA, we find that the *Interboro* doctrine cannot be applied to the facts of this case.

### 2. Applicability of the Interboro Doctrine

Three facts lead us to the conclusion that, unlike the discharged employee in *Inter-boro*, Kohls was not engaged in protected concerted activity when he refused to perform his assigned work on November 12. First, Kohls did not assert an interest on behalf of anyone other than himself; indeed, there is no evidence to indicate that Kohls even attempted to warn other employees not to drive the truck that he believed to be unsafe. He simply asserted that the truck was not safe enough for *him*. In *Interboro* the discharged employee was found to have been speaking on behalf of other workers.

Second, although a union agent was present with Kohls during the disputed incident on November 12, there is no evidence that Kohls and the union were acting in concert to assert a contractual claim for the protection of other employees. When another employee drove the truck later in the day, the union apparently made no effort to protest use of the truck. In *Interboro* the employees and the union worked together to correct certain alleged contract violations.

Third, although the union filed a grievance under the collective bargaining agreement, Kohls later withdrew the grievance, repudiating the bargaining agent's effort to pursue a claim under the contract between UPS and IBT. Nothing in the *Interboro* opinion indicates that a grievance procedure was there available for the protection of the discharged employees.

Together, these facts distinguish the present case from *Interboro* and demonstrate that Kohls' activity cannot reasonably be perceived as concerted. Since Kohls' refusal to drive the truck was not concerted activity, his discharge cannot be found to be a violation of section 8(a)(1) of

---

**12.** 440 F.2d at 884 (emphasis in original). In an earlier opinion, the Third Circuit had ruled that "talk looking toward group action" was protected under the NLRA. *Mushroom Transportation Co., Inc. v. NLRB*, 330 F.2d 683, 685 (3d Cir. 1964). The Third Circuit characterized this holding as an expansive definition of concerted activity. 440 F.2d at 884.

**13.** The Fifth Circuit also held that in any event *Interboro* was distinguishable since, unlike the situation in *Buddies Supermarkets, Interboro* involved attempts by employees to enforce the terms of a collective bargaining agreement. 481 F.2d at 719.

The Fifth Circuit's position on the *Interboro* doctrine was somewhat clouded by dicta in a subsequent opinion, *Anchortank, Inc. v. NLRB*, 612 F.2d 1153 (5th Cir. 1980). We find *Anchortank* to be inapposite.

the NLRA. In reaching this conclusion, it is significant that Kohls was not without a remedy; he could have pursued his contractual claim, through his lawful bargaining agent, under the grievance procedures provided in the collective bargaining agreement between the IBT and UPS. Nevertheless, the main point here is that, whether or not he could have prevailed on his contract claim, Kohls was never engaged in "concerted activity" and, therefore, UPS did not violate section 8(a)(1) when it discharged Kohls for his refusal to perform assigned work.

We should note that an anomalous result would be reached if we were to enforce the Board's finding of an unfair labor practice in this case. During oral argument, counsel for the Board conceded that, absent a claim rooted in section 502 of the LMRA,[14] the union could not have urged its members to engage in concerted action to enforce the applicable terms of the contract between the IBT and UPS. The union's proper course of conduct would have been to file a grievance under the collective bargaining agreement.[15] It thus seems contradictory for the Board to argue here that an employee, acting pursuant to the same contract that binds the union, can engage in "concerted" activity that the union would be barred from taking.

3. *The* Bloom *Decision and Deferral to Contract Grievance Procedures*

The Board's position that it need not have deferred its exercise of jurisdiction to arbitration is also anomalous. In *Bloom v.*

NLRB, 603 F.2d 1015 (D.C.Cir.1979), which involved facts nearly identical to the facts in this case, this court upheld the Board's decision to defer to arbitration, holding that the Board has considerable discretion to decline to exercise jurisdiction in unfair labor practice cases, so long as deference furthers the aims of the National Labor Relations Act. *Id.* at 1019.[16] This court has recognized that deference to the arbitration process frequently furthers the Act's aims of minimizing industrial strife and promoting industrial stability. *Id.*

In *Bloom* the Board deferred to an arbitral judgment that the employer had not breached the collective bargaining agreement when it discharged an employee for refusing to work because he believed a truck to be unsafe. The arbitrator's finding disposed of the alleged unfair labor practice charge, apparently to the Board's satisfaction. It is difficult to understand how the Board could come to the opposite conclusion here, finding both an unfair labor practice and breach of the contract, in a case involving facts identical in all material respects to those in *Bloom.* The Board has given no rational reason for its contradictory decision in this case.

█ Nothing in this opinion is intended to suggest that Board deference to arbitration is mandatory. The Board's attempt to distinguish the result in *Bloom*, with a brief statement that "there is no arbitration proceeding or award to defer to" (NLRB Brief at 26), merely obscures the issue in this case.[17] The real problem in the present

---

14. *See* note 7, *supra.*

15. In *Arlan's Department Store of Michigan, Inc.*, 133 N.L.R.B. 802 (1961), the Board went so far as to hold that under some circumstances a strike in violation of a no-strike agreement was unprotected even though the strike was precipitated by an employer unfair labor practice. The Board found that the unfair labor practice, a discharge, was isolated and the product of a clash of personalities, and that the union had redress available for the discharge under the grievance and arbitration provisions of the collective bargaining agreement. *See generally* R. Gorman, *Basic Text on Labor Law: Unionization and Collective Bargaining* 305–11 (1976).

16. Of course, it is generally understood that deference is appropriate only where the merits of the unfair labor practice claim depend on the merits of the contractual dispute. *See William E. Arnold Co. v. Carpenters District Council of Jacksonville and Vicinity*, 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974); *Roy Robinson, Inc.*, 228 N.L.R.B. 828 (1977); *Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971); *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955).

17. It should be noted that the Board's discretion to defer to arbitration applies to pre-arbitral cases as well as those in which an arbitration award has been made. *Local Union No. 2188, IBEW v. NLRB*, 494 F.2d 1087, 1090–91

case is that the Board has acted on a contractual claim that does not involve an unfair labor practice . As the Supreme Court noted in *C & C Plywood Corp.*, 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967):

> Congress determined that the Board should not have general jurisdiction over all alleged violations of collective bargaining agreements . . . . To have conferred upon the National Labor Relations Board generalized power to determine the rights of parties under all collective agreements would have been a step toward governmental regulation of the terms of those agreements. We view Congress' decision not to give the Board that broad power as a refusal to take this step.

385 U.S. at 427–28, 87 S.Ct. at 563.

When considered in a proper perspective, the deferral issue is a red herring in this case. It is true that "Board policy is to refrain from exercising jurisdiction in respect of disputed conduct *arguably both an unfair labor practice and a contract violation* when . . . the parties have voluntarily established by contract a binding settlement procedure." *William E. Arnold Co. v. Carpenters District Council of Jacksonville and Vicinity*, 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974) (emphasis added). It is also clear that the Board need not "cede its jurisdiction to private tribunals" to "hear and to dispose of unfair labor practices." *General American Transportation Corp.*, 228 N.L.R.B. 808, 808 (1977). However, in a case such as the instant one, which involves a contractual claim unrelated to an unfair labor practice, the Board has no authority to resolve the contractual issue.

The decision in *Bloom* is thus significant not merely because the Board deferred to arbitration, but because of the ultimate judgment by the Board in *Bloom* that the employer's action did not violate the Act. Since the Board found no unfair labor practice in *Bloom*, and since the facts in this case are nearly identical to the facts in *Bloom*, it is difficult to understand how the Board could reach a different result with respect to Kohls. In any event, since we have found that Kohls' refusal to work was not concerted activity under the NLRA, and since the Board found no other unfair labor practices and does not rely on section 502 to support its decision in this case, we must reject the Board's finding of a section 8(a)(1) violation against UPS.

## III. THE CLAIM FOR ATTORNEY'S FEES

Finding as we do that Kohls' refusal to work was unprotected activity and that his discharge did not violate the Act, it is unnecessary for us to consider Kohls' claim for attorney's fees. Absent an order in Kohls' favor, there is no basis for an award of attorney's fees. We do not mean to indicate that attorney's fees should have been awarded had Kohls prevailed in this case; rather, we simply decline to express any opinion on the matter.

## IV. CONCLUSION

On the basis of the foregoing, we hereby deny enforcement of that part of the Board's supplemental order that is adverse to UPS and enforce the Board's order denying Kohls attorney's fees.

*So ordered.*

---

(D.C.Cir.1974). It should also be noted that this case is unlike *NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967), and *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), both of which were cited by the Board, where the Court found the Board's exercise of jurisdiction appropriate in part because the collective bargaining agreements in those cases contained no arbitration clause.