**EVERGREEN MEDIA CORPORATION, Plaintiff,**

v.

**RADIO & TELEVISION BROADCAST ENGINEERS, LOCAL UNION NUMBER 1220 of the BROTHERHOOD of ELECTRICAL WORKERS, Defendant.**

**No. 96 C 6661.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 15, 1997.

Dean A. Dickie, Jacqueline E. Kalk, D'Ancona & Pflaum, Chicago, IL, for Plaintiff.

Lawrence Jay Weiner, Sheila C. Riley, Scariano, Kula, Ellch & Himes, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiff Evergreen Media Corporation (Evergreen), seeking a declaration that it is no longer obliged to respect the terms of its collective bargaining agreement (the Agreement) with Defendant Radio & Television Broadcast Engineers (the Union), filed this suit under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Upon receiving the Union's answer to its complaint, Evergreen filed the motions presently before us, asking that we dismiss the Union's counterclaim and strike the Union's affirmative defenses. For the reasons given below, we deny both motions.

### I. Background

Evergreen owns and operates radio stations WLUP–AM and FM in the Chicago area, and the Union is the collective bargaining agent for the broadcast technicians and engineers that Evergreen employs at those stations. See Compl. Ex. A (Agreement). The parties entered into the Agreement in March, 1993, see Compl. ¶ 7; Answer ¶ 7, and its continued binding force is the subject of this suit.

The Agreement provided that it would expire on October 31, 1995, so long as one party wanted to terminate or modify it and gave 60 days notice of this intention to the other party; if neither party gave such notice, the Agreement was to remain in effect on a year-to-year basis. Compl. Ex. A (Agreement Art. I, §§ 1 and 2). On August 29, 1995, shortly before the 60 day deadline, Evergreen sent a letter to the Union giving notice of Evergreen's desire that the Agreement terminate. Compl. Ex. B (Letter to Jessica Logan). On October 31, 1995, the parties commenced negotiations to replace the Agreement, see Compl. ¶ 11; Answer ¶ 11, but those negotiations have not been successful and the parties have not agreed on a new collective bargaining agreement, see Compl. ¶ 12; Answer ¶ 12.

The Agreement further provided that even if one party tendered a proper notice of termination or modification, the Agreement's terms would remain in effect—as "status quo conditions"—until October 31, 1995, after which either party could unilaterally terminate those conditions by sending written notice to the other party. Compl. Ex. A (Agreement Art. I, § 2). In February, 1996, following the Union's alleged abandonment of negotiations, see Compl. ¶ 13, Evergreen sent the Union a letter purporting to end the status quo conditions. Compl. Ex. D (Letter to Jessica Logan). The Union objects that this suspension was unlawful under the National Labor Relations Act (NLRA) since the parties had not reached a bargaining impasse, see Richmond Recording Corp. v. NLRB, 836 F.2d 289, 293 (7th Cir.1987) (citing cases), and it contends that the status quo conditions therefore remain in effect. See Answer ¶ 13.

Unsatisfied with Evergreen's conduct during the negotiations, the Union lodged with the National Labor Relations Board (NLRB) two unfair labor practice charges against Evergreen. The first of these, Charge No. 13–CA–34123, filed in March, 1996, alleged that Evergreen refused to comply with the Union's requests for information, many of which concerned WRCX–FM, a station the Union contends the Agreement covers. See Answer ¶ 1 and Exs. 1 and 2. The second, Charge No. 13–CA–34430, filed in July, 1996, complained of a host of improprieties: Evergreen's refusal to bargain with the Union, wrongful suspension of status quo conditions, assignment of bargaining unit work to non-bargaining unit employees, threats of discipline against employees who support the Union, refusal to process grievances in the agreed-upon manner, and improper direct bargaining with an employee. See Answer Ex. 3. The NLRB consolidated the Union's two Charges but postponed a hearing on them pending the completion of its investigation. See Answer Ex. 4 (NLRB Order).

Evergreen filed this declaratory judgment action in October, 1996, prompting the Union to move for dismissal of the suit for lack of subject matter jurisdiction. The Union argued that Congress granted the NLRB

exclusive jurisdiction over unfair labor practices such as an employer's improper termination of status quo conditions. *See Evergreen Media Corp. v. Radio & Television Broad. Eng'rs,* No. 96 C 6661, 1997 WL 282597, at *3 (N.D.Ill. May 19, 1997). Evergreen responded, in essence, that the parties contracted around the NLRA's impasse requirement and that its suit was merely one to enforce the Agreement. *See id.* We held that even if Evergreen's termination of status quo conditions was an unfair labor practice over which the NLRB has jurisdiction, Evergreen's declaratory judgment suit concerned the proper interpretation of the Agreement, and our jurisdiction was therefore proper under 29 U.S.C. § 185. *See id.* at *4. We acknowledged that our ruling might have left this Court and the NLRB with concurrent jurisdiction over various aspects of the underlying dispute, but we declined the Union's request that we stay the proceedings in this case until the NLRB issued its ruling. *See id.* Apparently unhappy with this outcome or fearful that it might otherwise forfeit its claims, the Union in its Answer incorporated the substance of each of its unfair labor practice allegations, now styled as a counterclaim and as affirmative defenses. Evergreen's motion to dismiss the counterclaim and to strike the affirmative defenses is now before us.

## II. Motion to Dismiss Counterclaim

■ Evergreen moves that we dismiss the Union's counterclaim on the ground that we lack subject matter jurisdiction to hear it. *See* FED. R. CIV. P. 12(b)(1), (h)(3). We evaluate this motion on the same basis as a motion to dismiss a complaint, *see Tice v. American Airlines, Inc.,* No. 95 C 6890, 1997 WL 80911, at *3 (N.D.Ill. Feb.21, 1997): we take all of the Union's well-pleaded facts and allegations as true and we view their reasonable inferences in the Union's favor, *see Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995).

In its counterclaim, the Union repeatedly alleges that Evergreen committed acts which "interfered with and restrained the Union's ability to perform its duties as the exclusive collective bargaining representative of Plaintiff's Broadcast Engineers and Technicians," thereby violating "both the spirit and terms of the Agreement, and/or the LMRA, and/or the NLRA." *E.g.,* Countercl. ¶ 2. These include: adding a new station, WRCX, on the premises and objecting to the Union's jurisdiction over the employees at WRCX, *see id.* ¶¶ 1–3; refusing to bargain its decision to relocate WRCX, *id.* ¶ 8; terminating the status quo conditions before bargaining to impasse, *see id.* ¶¶ 4, 5; failing to put its bargaining proposals in writing, *see id.* ¶ 6; refusing to meet with the Union prior to October 31, 1995, *see id.* ¶ 7; refusing to comply with the Union's information requests, *see id.* ¶ 9; subcontracting bargaining unit work at WRCX to non-bargaining unit employees, *see id.* ¶ 10; threatening bargaining unit members with discipline for supporting the Union, *see id.* ¶ 11; failing to process hundreds of grievances filed by the Union, *see id.* ¶ 12 and bargaining directly with a member of the bargaining unit, *see id.* ¶ 13. The Union asks that we order Evergreen to remedy these violations and that we award any other available relief.

Evergreen contends that these accusations amount to nothing more than allegations of unfair labor practices, and it reminds us that the NLRB has exclusive jurisdiction over such allegations.[1] *See, e.g., William E. Arnold Co. v. Carpenters Dist. Council,* 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974). We note that the Union, too, believes them to be allegations of unfair labor practices, as each appears in at least one of the Union's two filings with the NLRB. *See* Answer Exs. 1–3.

■ Our previous opinion makes clear, however, that whether a party has alleged

---

1. Evergreen quotes 29 U.S.C. § 160(a) as stating that the NLRB's jurisdiction to adjudicate unfair labor practice charges "shall be *exclusive* ...." Pl.'s Mot. at 3 (emphasis Evergreen's). While correct about the fact of the NLRB's exclusive jurisdiction over unfair labor practice charges, Evergreen's counsel does this Court no favors by quoting and emphasizing statutory language which Congress repealed 50 years ago. *See Capital Serv., Inc. v. National Labor Relations Bd.,* 204 F.2d 848, 854 (9th Cir.1953) (discussing the Taft–Hartley Act's 1947 removal of the "shall be exclusive" language from § 160(a)).

conduct which constitutes an unfair labor practice does not end our inquiry, as the district courts have concurrent jurisdiction with the NLRB over conduct constituting an unfair labor practice when " 'the activity in question also constitutes a breach of a collective bargaining agreement.' " *Evergreen,* 1997 WL 282597, at *3 (quoting *William E. Arnold,* 417 U.S. at 16, 94 S.Ct. at 2072). Since "[s]ection 301 covers collective bargaining agreement disputes," *id.* at *4, the district courts always have jurisdiction over claimed violations of those agreements. The Union acknowledges these principles and makes two arguments which it believes validate the entire counterclaim.

■ As its first attempt to save *en masse* the allegations in its counterclaim, the Union makes an unusual claim: it contends that the Agreement "incorporates" both the NLRA and the LMRA, so that any conduct which violates either of those statutes, such as an unfair labor practice, also violates the Agreement, thereby providing this Court with jurisdiction. Def.'s Resp. at 2–4. In support of this claim, the Union points to Article I, Section 7(d) of the Agreement, which states that

> Nothing herein shall be deemed to violate any of the provisions of the Labor Management Relations Act of 1947. If any provision of this Agreement ... shall be held invalid, the remainder of the Agreement ... shall not be affected thereby .... The parties shall not be required to perform and shall not perform any provisions of this Agreement, the performance of which would be unlawful under applicable statutes and governmental regulations, but such provisions or parts thereof which are lawful shall be performed at such time and in the amounts permitted under such statutes and governmental regulations.

Compl. Ex. A (Agreement Art. I; § 7(d)). The Union reads this provision as implying that any conduct which violates the labor laws also violates the Agreement. We disagree with this interpretation. This language—essentially a severability clause— merely states that a court should not construe the Agreement to violate or as requiring that the parties violate the NLRA or the LMRA. The Agreement does not in any meaningful sense "incorporate" wholesale the substance of the NLRA or the LMRA, and this Court does not have jurisdiction over the Union's counterclaim merely because it alleges violations of those laws.

As its second attempt to save its entire counterclaim, the Union argues that each of the counterclaim's allegations concern the same transaction or occurrence as that which underlies Evergreen's original claim, making its counterclaim a mandatory one under Federal Rule of Civil Procedure 13(a). *See* Def.'s Resp. at 7. This is arguably true, given the Supreme Court's liberal interpretation of the term "transaction," *see Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974) ("Under Rule 13(a)'s predecessor this Court held that 'transaction' is a word of flexible meaning which may comprehend a series of occurrences if they have a logical connection ...." (citing *Moore v. New York Cotton Exch.,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926))), but it is also irrelevant.

■ While we ordinarily have supplemental jurisdiction over claims transactionally related to a claim over which we have original jurisdiction, supplemental jurisdiction does not operate where a federal statute expressly provides otherwise. *See* 28 U.S.C. § 1367(a). Here, the Supreme Court has interpreted 29 U.S.C. § 160(a) as granting the NLRB exclusive jurisdiction over unfair labor practice allegations, *see, e.g., William E. Arnold,* 417 U.S. at 16, 94 S.Ct. at 2072, and this holding acts to deprive this Court of supplemental jurisdiction over those parts of the Union's counterclaim which lack independent jurisdictional support. *Cf. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. U.S.,* 22 F.3d 741, 744 (7th Cir.1994) (holding that § 1367 supplemental jurisdiction cannot override the exclusive jurisdiction of the Court of Federal Claims to hear certain damage claims against the United States); *United States v. Shafter,* 49 F.R.D. 164, 169 (S.D.N.Y.1969) ("None of the policies underlying the compulsory counterclaim rule are sufficiently compelling to override the Congressional determination to place exclusive jurisdiction of such claims elsewhere than in

the federal courts."), *aff'd per curiam*, 424 F.2d 281 (2d Cir.1970).

In sum, and as we held in our last decision, this Court *only* has jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Since the Union's counterclaim states each allegation in the alternative—pleading a violation of "both the spirit and terms of the Agreement, and/or the LMRA, and/or the NLRA," *e.g.* Answer ¶ 1—we now review every allegation in turn to determine whether each states a colorable claim for breach of contract.

■ Paragraphs 1–3, 8, and 10 at least in part concern the status of station WRCX under the Agreement, and the Union alleges that the work at WRCX was performed "pursuant to the terms and conditions of the Agreement." *Id.* ¶ 7. We hold that we have jurisdiction over these claims only to the extent that the Union alleges that Evergreen's actions with respect to WRCX violated the Agreement.

■ Paragraphs 4 and 5 allege that the Agreement did not alter the general requirement that the parties bargain to impasse before Evergreen could terminate the status quo conditions and that Evergreen's termination was therefore improper. Since these allegations implicate the operation of a contract provision, *see* Compl. Ex. 1 (Agreement Art. I, § 2), we hold that we have jurisdiction over them.

■ Paragraphs 6, 7, 9, and 11 concern Evergreen's conduct during the collective bargaining negotiations. We hold that we have jurisdiction over these claims only to the extent that the Union alleges that the conduct of which it complains violated the

contract's renegotiation provisions, *see id.* (Agreement Art. I, §§ 1 and 2).

■ Paragraph 12 alleges that Evergreen failed to process grievances according to the proper procedure. We note that the Agreement contains a provision governing grievances, *see id.* (Agreement Art. II, § 1), and we hold that we have jurisdiction over this claim.

■ Paragraph 13 alleges that Evergreen bypassed the Union and bargained directly with a member of the bargaining unit. We hold that we have jurisdiction over this claim only to the extent that the Union alleges that Evergreen's conduct violated the Agreement, *see id.* (Agreement Art. I, § 6).

■ As a corollary to the above holdings, we further hold that we do not have jurisdiction over any of the allegations to the extent that the Union simply complains of a violation of the NLRA or LMRA. With these considerations in mind, we deny Evergreen's motion to dismiss the Union's counterclaim.[2]

### III. Motion to Strike Affirmative Defenses

■ Evergreen moves that we strike the Union's affirmative defenses, all ten of which partially repeat and none of which add anything to the substance of the allegations the Union made in its counterclaim and in the Charges it filed with the NLRB. Evergreen contends that these allegations are not "affirmative defenses" as contemplated by Rule 8(c).

■ Rule 8(c) requires a party to set forth in a responsive pleading any affirmative defenses which that party plans to offer against the claim(s) of the opposing party. FED. R. CIV. P. 8(c). The Rule provides a partial list of such defenses, such the statute

---

2. It has come to our attention that Evergreen, in its answer to the unfair labor practice charges before the NLRB, stated the following:

[A]ny disputes concerning the notice, the right to change *status quo* conditions and whether any such changes were improper, *raise contract interpretation issues rather than statutory issues*. The contract interpretation issues presently are the subject of litigation in the United States District Court for the Northern District of Illinois.... [T]o avoid duplicative and un-

necessary litigation, all allegations in the Complaint relating to changes in *status quo* conditions should be dismissed with prejudice.

Def.'s Surreply Ex. 2 (Evergreen's Answer to NLRB, Affirmative Defenses ¶ E) (emphasis Evergreen's). This flatly contradicts Evergreen's filings with this Court, and we find Evergreen's assertion of mutually antagonistic positions in different fora deeply troubling; this may be the sort of conduct to which Rule 11 was directed. FED. R. CIV P. 11(b)(1), (2).

of limitations, waiver, illegality, and the like, and it also contains the catch-all category "any other matter constituting an avoidance or affirmative defense." *Id.* Generally speaking, the "other matter" to which the Rule refers encompasses two types of pleadings: (1) ones that admit the allegations of the complaint but "suggest some other reason why there is no right of recovery"; and (2) ones that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D.Ill. 1982).

■■■ We discern in the Union's list of affirmative defenses only one which falls within the list of examples given in Rule 8(c). The Union alleges that the NLRA and/or the LMRA superseded the Agreement, *see* Affirm. Defenses ¶ 9, and that Evergreen's termination of status quo conditions pursuant to the Agreement violated the NLRA and/or the LMRA, *see id.* ¶¶ 1, 2, 8, 10. Cumulatively, this amounts to an allegation that the Agreement's provision concerning the termination of status quo conditions is illegal, an affirmative defense which Rule 8(c) specifically recognizes and which we therefore refuse to strike. Of course, even though we must look to the NLRA and the LMRA to evaluate this defense, our allowing it does not intrude on the NLRB's exclusive jurisdiction over the Union's unfair labor practice claim. We will not (and could not) impose on Evergreen liability for committing an unfair labor practice; our inquiry is limited to determining whether the Agreement violated the labor laws and, if so, whether Evergreen may nonetheless enforce it.

The other allegations made by the Union as affirmative defenses must either stand or fall as "other matter" in order to qualify under Rule 8(c). In those allegations, the Union appears to ask that we deny Evergreen the judgment it seeks—enforcement of the provisions of the Agreement as it interprets them—on the ground that Evergreen violated the Agreement by refusing to negotiate prior to October 31, 1995, *see id.* ¶ 3; breaching a tentative agreement, *see id.* ¶ 4; not bargaining in good faith, *see id.* ¶ 5;

failing to comply with the Union's requests for information, *see id.* ¶ 6; and refusing to acknowledge that the Agreement covers WRCX, *see id.* ¶ 7.

We hold that these allegations, to the extent that they amount to a claim that we should not allow Evergreen to enforce the Agreement because Evergreen violated it, do state an affirmative defense. *See generally* RESTATEMENT (SECOND) OF CONTRACTS § 369 (1979) ("Specific performance or an injunction may be granted in spite of a breach by the party seeking relief, unless the breach is serious enough to discharge the other party's remaining duties of performance."). While the Union did not, contrary to the general rule, admit the allegations of the complaint prior to stating the additional facts which it believes preclude recovery, we read its affirmative defenses as pleading in the alternative. *See* FED. R. CIV. P. 8(e) ("A party may also state as many separate claims or defenses as the party has regardless of consistency . . . .") That is, we read the Union's pleadings as first denying certain facts in its answer and then, for the purpose of argument, admitting those facts and stating others as an affirmative defense. *See Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D.Ill.1995) ("Each defendant either expressly or impliedly treats the factual allegations in a complaint as true, but then goes on to assert new matter that eliminates the defendant's ordinary liability stemming from those allegations."). The Union's defense is thus a textbook example of the first type of affirmative defense identified in *Bobbitt*, 532 F.Supp. at 736. It also qualifies as the second type, since allegations of Evergreen's breach of the Agreement fall outside the elements of Evergreen's prima facie case. *See id.;* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (2d ed.1990) (discussing affirmative defenses not mentioned in Rule 8(c)); *cf. United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir. 1989) (holding that "buyer" status is an affirmative defense since "the absence of 'buyer' status is not an element which the plaintiff must establish to make out a prima facie showing of liability" and citing *Gomez v.*

*Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980)).

We thus understand the Union as offering two affirmative defenses, each with several supporting allegations. First, the Union contends that the Agreement was illegal if it allowed Evergreen to suspend status quo conditions in violation of the labor laws. Second, the Union submits that Evergreen's own violations of the Agreement's termination and renegotiation provisions prevent it from enforcing those provisions.

It may seem unusual that we allow the same allegations to serve the Union in so many ways. For example, the Union has used its allegation that Evergreen's termination of status quo conditions was improper to support its counterclaim, one affirmative defense, and an unfair labor practice charge. The work done by this allegation is possible due to the various uses to which the Union puts it. While serving as a counterclaim, the allegation states a claim for breach of contract. As an affirmative defense, the allegation aims to prevent Evergreen's enforcement of an arguably illegal contract provision. Finally, wearing the guise of an unfair labor practice charge, it maintains that Evergreen's actions violated the labor laws themselves. There is no inconsistency or unseemly overlap here.

## IV. Conclusion

Consistent with our understanding of the Union's counterclaim and affirmative defenses, we deny Evergreen's motions to dismiss [38–2] and to strike [38–1] them. It is so ordered.