**CABLE GUIDE RAILING CONSTRUCTION CO., INC., Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS (AFL–CIO), LOCAL UNION NO. 348, Defendant.**

Civ. A. No. 81–240.

United States District Court,
W. D. Pennsylvania.

July 19, 1982.

Charles R. Volk, Richard Riese, Thorpe, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

William Scarpitti, Jr., Erie, Pa., Alaine S. Williams, Richard Kirschner, Jonathan K. Walters, Philadelphia, Pa., for defendant.

OPINION

MENCER, District Judge.

This case comes before the Court on cross-motions for summary judgment. Plaintiff Cable Guide Railing Construction Company brought this action pursuant to

Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking to vacate an arbitration award which granted judgment in favor of the International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 348.

Cable Guide is a highway construction contractor doing business in Western Pennsylvania and Western New York through separate operating divisions. Since 1979, Cable Guide has been a member of the Constructors Association of Western Pennsylvania (CAWP), a multi-employer association of highway and heavy construction contractors covering thirty-three counties in Pennsylvania. As a member, Cable Guide is a signatory to the association's collective bargaining agreement with the United Brotherhood of Carpenters, the Laborers' District Council of Western Pennsylvania, the Cement Masons' Local No. 526, and the Pile Drivers Local No. 2264.

In June, 1979, Cable Guide was hired to install bridge railing on a project in Chautauqua County, New York. The Southern Tier Builders Association, as the bargaining association for highway and heavy construction employers in the Chautauqua area, had entered into a collective bargaining agreement with Iron Workers Local 348. To comply with the requirements of the general contractor, Cable Guide contacted Local 348, requesting the referral of two iron workers to the Chautauqua project. In order to obtain the referrals, Cable Guide signed stipulations binding it to the collective bargaining agreement between the Southern Tier Builders Association and Iron Workers Local 348, and the collective bargaining agreement between the Erie Construction Council and Iron Workers Local 348. After the Chautauqua project, Cable Guide employed iron workers once more in September, 1979 for a project in Jamestown, New York. Local 348 concedes that it never represented a majority of Cable Guide's employees.

In the summer of 1981, Cable Guide installed guard rails, impact attenuators, and road signs on a highway in Erie County, Pennsylvania. As had been its usual practice in the thirty-three counties covered by the CAWP agreement, Cable Guide employed Laborers for the performance of this work. Cable Guide did not employ members of the Iron Workers union on the project, nor did the union request to do this work.

Local 348 subsequently filed a grievance against Cable Guide alleging a violation of its work jurisdiction in connection with the Erie project. After a hearing held on September 8, 1981 at which Cable Guide did not appear, an arbitration committee awarded judgment in favor of Local 348 in the amount of $39,769.20.

■ At issue in this case is the enforceability of the prehire agreement formed when Cable Guide stipulated to be bound by the 1979–1984 collective bargaining agreement between the Erie Construction Council and Local 348. A pre-hire agreement is a type of agreement peculiar to the construction industry whereby an employer may enter into a collective bargaining relationship with a union before it represents a majority of the employees. Absent the specific exception contained in Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), such agreements would be barred as violative of employee free choice. This exception represents an accommodation to the construction industry, which is characterized by high employee turnover as project sites change. The pre-hire agreements thus allow construction employees some of the wage and benefit advantages of union representation, while the employer is assured a qualified pool of workers and predictable labor costs. *Todd v. Jim McNeff, Inc.,* 667 F.2d 800, 802 (9th Cir. 1982).

This exception nevertheless must be tempered with a concern for protecting the employees' Section 7 right to bargain collectively through representatives of their own choosing. In *NLRB v. Local Union No. 103, International Association of Bridge, Structural and Ornamental Iron Workers (Higdon Construction Company),* 434 U.S. 335, 345, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978), the Supreme Court ruled that "[t]he employer's duty to bargain is contingent on the union's attaining majority support at the various construction sites." In *Higdon,*

a union which admittedly lacked majority support picketed the employer for its failure to comply with the terms of a pre-hire agreement. The Court held that it is an unfair labor practice within the meaning of § 8(b)(7)(C) of the NLRA for an uncertified union not representing a majority of the employees to engage in extended picketing to enforce a pre-hire agreement. In upholding the decision of the National Labor Relations Board, the Court noted the following:

> Under the Board's view of § 8(f), a pre-hire agreement does not entitle a minority union to be treated as the majority representative of the employees until and unless it attains majority support in the relevant unit. Until that time the pre-hire agreement is voidable and does not have the same stature as a collective-bargaining contract entered into with a union actually representing a majority of the employees and recognized as such by the employer.... We have concluded that the Board's construction of the Act, although perhaps not the only tenable one, is an acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections.

The lower federal courts have differed in their application of *Higdon* to issues regarding the enforceability of pre-hire agreements. Under the most restrictive interpretation, courts have ruled that the *Higdon* decision is limited to unfair labor practice suits; in breach of contract cases such as this one, pre-hire agreements are fully enforceable. *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128 (8th Cir. 1981); *New Mexico District Council of Carpenters v. Mayhew Co.*, 664 F.2d 215 (10th Cir. 1981). Other courts have adopted a second construction of *Higdon*, ruling that until the union affirmatively demonstrates majority support, no contract has been formed. *E.g., Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 488 F.Supp. 816 (D.D.C. 1980). The courts following the third approach allow the employer to exercise a right of repudiation until the union achieves majority status. Under this view, a pre-hire is enforceable until such repudiation occurs. *E.g., Todd v. Jim McNeff, Inc.*, 667 F.2d at 803.

We find the third position to be the most persuasive because it best effectuates national labor policies and applies the most reasonable construction of *Higdon*. Requiring repudiation in order to avoid the pre-hire agreement forecloses the possibility that an employer will profit from the agreement by enjoying a steady source of labor at predictable cost, and later claim that no contract was formed to avoid its contractual obligations. Under this view, employee free choice is not unduly hampered, since an employer still may exercise the right to repudiate the agreement.

Furthermore, the *Higdon* Court did not suggest that pre-hire agreements were void. Rather, the Court noted the Board's view that § 8(f) agreements are *voidable* until the union attains majority support, and concluded that this position is an acceptable reading of the statutory language. 434 U.S. at 341, 98 S.Ct. at 655.

We therefore rule that in order to avoid its contractual obligations, the employer must repudiate the pre-hire agreement before the union achieves majority status. Until repudiation, the agreement is enforceable in a § 301 suit.

The question here then becomes whether Cable Guide effectively repudiated its pre-hire agreement with Local 348. In some circumstances, notice of an employer's intent to repudiate may be imparted by conduct. *Eastern District Council of the United Brotherhood of Carpenters v. Blake Construction Co.*, 457 F.Supp. 825, 831 (E.D. Va.1978). Since September, 1979, Cable Guide has not relied upon the pre-hire agreement to obtain referrals from Local 348. Rather, Cable Guide has openly employed members of the Laborers' union for its work in Pennsylvania in compliance with the CAWP agreement. In 1980, Cable Guide failed to comply with the bonding requirements, despite notification from Local 348 that such bonding was necessary under the terms of its agreement. Local 348 therefore cannot claim that Cable Guide

misled it into believing that it would perform its contractual obligations by enjoying the benefits afforded by the pre-hire agreement.

In light of the foregoing, we hold that Cable Guide properly repudiated the pre-hire agreement before Local 348 attained majority support of Cable Guide's employees. Since the contract is unenforceable, the arbitration award will be vacated, and judgment will be entered in favor of Cable Guide in accordance with the following order.

### ORDER

AND NOW, this 19th day of July, 1982, IT IS HEREBY ORDERED that the motion for summary judgment filed by plaintiff Cable Guide Railing Construction Co., Inc. is granted, the award of the Erie Construction Council Arbitration Committee is vacated, and the counterclaim filed by defendant Ironworkers Local No. 348 is dismissed and judgment is hereby entered in favor of the plaintiff and against the defendant.