CONTRACTORS, LABORERS, TEAMSTERS & ENGINEERS HEALTH & WELFARE PLAN; Contractors, Laborers, Teamsters & Engineers Pension Plan; Omaha-Council Bluffs Laborers Local # 1140 Holiday Trust; Laborers Training Fund; and Construction and General Laborers Union, Local No. 1140, Appellees,

v.

HARKINS CONSTRUCTION & EQUIPMENT COMPANY, INC., a Nebraska corporation, Appellant.

CONTRACTORS, LABORERS, TEAMSTERS & ENGINEERS HEALTH & WELFARE PLAN; Contractors, Laborers, Teamsters & Engineers Pension Plan; Omaha-Council Bluffs Laborers Local # 1140 Holiday Trust; Laborers Training Fund; and Construction and General Laborers Union, Local No. 1140, Appellants,

v.

HARKINS CONSTRUCTION & EQUIPMENT COMPANY, INC., a Nebraska corporation, Appellee.

Nos. 83–2217, 83–2218.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1984.

Decided May 14, 1984.

Nelson & Harding, Roger J. Miller and Dale E. Bock, Omaha, Neb., for appellant.

David D. Weinberg, Weinberg & Weinberg, P.C., Malcolm Young and Duncan Young, Young & White, Omaha, Neb., for appellees, cross-appellants.

Before BRIGHT, FAGG and BOWMAN, Circuit Judges.

BRIGHT, Circuit Judge.

Construction and General Laborers Union, Local No. 1140 (the Union) and various union trusts [1] brought this action in federal

---

**1.** Contractors, Laborers and Teamsters Health and Welfare Plan, Contractors, Laborers and

district court[2] against Harkins Construction & Equipment Company (Harkins Construction), seeking specific performance of a participation agreement and the collective bargaining agreements incorporated therein. The district court determined that the participation agreement constituted an enforceable prehire agreement within the meaning of section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). Accordingly, the district court entered judgment in favor of the Union and the trusts for wages due Harkins Construction employees and contributions due the trusts under the agreement. Harkins Construction appeals.

Harkins Construction argues that the district court erred in failing to find 1) that the agreement was subject to an unsatisfied condition precedent, 2) that Harkins Construction's contractual obligations, if any, ceased upon the termination of the collective bargaining agreement in existence at the time Harkins signed the participation agreement, and 3) that Harkins Construction repudiated the agreement by conduct long before its written repudiation. In addition, Harkins Construction contends that the court erred in finding that certain work fell within the terms of the agreement. In a cross-appeal, the Union and the trusts argue that the district court erred in denying them attorneys' fees.

After reviewing the record, we conclude that the district court's findings are not clearly erroneous, but that it failed to make express findings on two issues that are crucial to the proper resolution of this lawsuit. Accordingly, we vacate the judgment and remand for additional findings. In addition, we reject appellees' cross-appeal.

## I. *Background.*

On June 1, 1979, Jerold R. Harkins, the owner of Harkins Construction—a company engaged primarily in the installation of underground telephone cable in and around Omaha, Nebraska—signed a participation agreement at the request of the Union.[3] The agreement required Harkins Construction to comply with the provisions of collective bargaining agreements between the Union and various employer associations as to wages, hours, and conditions of employment, and to make contributions to certain fringe benefit trusts for its employees. The participation agreement also bound Harkins Construction to any amendments or modifications executed by the Union and the employer associations with respect to contributions to the trusts.

After June 1, 1979, Harkins Construction employed thirty-nine persons covered by one of the collective bargaining agreements to which the participation agreement referred, the 1977–80 Heavy Contractors Agreement. Harkins Construction, however, did not pay the wages mandated by the collective bargaining agreement. Nor did it make the required contributions to the trusts, ignoring the demand letters sent by the trusts. In addition, Harkins Construction never used the Union's hiring hall, never posted any bond, never paid union dues, and never appointed any job steward.

Teamsters Pension Plan, Omaha-Council Bluffs Laborers Local No. 1140 Holiday Trust, and Laborers Training Fund.

2. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

3. The participation agreement provides, in part:
The undersigned employer agrees to be bound by the terms and provisions of collective bargaining agreements entered into between [various employer associations including the Heavy Contractors Association, Inc. of Omaha, Nebraska] and [the Union], which also establishes health and welfare, pension, holiday and laborers training trust funds and agrees to abide by these agreements and pay the amounts designated by the collective bargaining agreements for each hour worked by employees represented as collective bargaining agent, by [the Union], into [the plaintiff/appellee trusts]. * * *
The undersigned employer further agrees to be bound by, and be subject to all amendments, modifications, and changes executed by [the employer associations] and [the Union], executed in the future with respect to contributions to the above designated trust funds.

The record indicates that Leonard J. Schaefer, the Union's business manager, knew in the latter part of 1979 or early 1980 that Harkins Construction was delinquent in making contributions to the trusts. Schaefer also recalled being at a Harkins Construction jobsite in May of 1981, and learning that Harkins was not paying the wage mandated in the collective bargaining agreement.

On June 1, 1981, the Union and the trusts brought this action against Harkins Construction for breach of contract. Ten days later, on June 10, 1981, Harkins Construction mailed a certified letter to Schaefer, which read in part:

> Please be further advised that it is our position that any agreements which may have been executed by the Company with your labor organization have long since been terminated. However, and without prejudice to any allegations we make in this or any other action, the employer herewith serves notice upon you of its intent to terminate any and all agreements by and between the employer and your labor organization to become effective no later than sixty (60) days from the date hereof.

The district court concluded that the participation agreement constituted an enforceable prehire agreement within the meaning of section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f). The court also found that Harkins Construction's June 10th certified letter effectively repudiated the agreement. Accordingly, the court entered judgment in favor of the Union and the trusts for wages due Harkins Construction employees and contributions due the trusts under the agreement from June 1, 1979, when Harkins signed the agreement, to June 10, 1981, when he expressly repudiated it.

## II. Discussion.

### A. Condition Precedent.

■ Harkins Construction argues that the district court erred in failing to find

that the participation agreement was subject to an unsatisfied condition precedent. According to the company, the parties intended the agreement to be inoperative unless the Union and all of the cable-laying contractors subsequently negotiated and ratified a full collective bargaining agreement. The Union disagrees, arguing that the unambiguous document which Harkins signed speaks for itself. After reviewing the evidence, we cannot say the district court erred in failing to find the existence of a condition precedent.

Witnesses at trial presented conflicting accounts of what was said at the time Harkins signed the agreement. Harkins testified that Jack Budd, the Union representative who obtained his signature, advised him that the participation agreement's only purpose was to indicate to other cable-laying contractors Harkins' willingness to meet with the Union to negotiate a collective bargaining agreement provided that the other contractors agreed to do the same. Representatives of two other cable-laying contractors, who also signed the participation agreement on June 1, 1979 at Budd's request, corroborated Harkins' testimony as to the limited scope of the agreement. Budd denied making any such representations to Harkins. A Union official who accompanied Budd to obtain Harkins' signature, corroborated Budd's testimony.

Harkins Construction also introduced evidence of conduct by the Union that seems to be consistent with Harkins' contention. First, on June 13, 1979, the Union met with a number of the cable-laying contractors who had signed the participation agreement thirteen or fourteen days earlier.[4] There is support in the record for Harkins Construction's contention that the purpose of the meeting was to negotiate and execute a collective bargaining agreement, although the evidence is equivocal on this point. Second, two of the contractors who signed the participation agreement later executed full collective bargaining agreements—an unnecessary exercise, according

---

4. Harkins did not attend this meeting.

to Harkins Construction, if the contractors were in fact bound to the terms of a collective bargaining agreement by the participation agreement.

The district court resolved this disputed issue of fact in favor of the Union. Notwithstanding evidence in the record which supports Harkins' contention that finding cannot be characterized as clearly erroneous, in light of the conflicting testimony as to the existence of a condition precedent and the unconditional terms contained in the written document which Harkins signed.

### B. Repudiation by Conduct.

Harkins Construction next contends that it repudiated the prehire agreement by conduct long before June 10, 1981, when it formally terminated the agreement.[5] Whether or not a prehire agreement can be repudiated by conduct, without some express notice of repudiation to a union, seems to be an open question and is one of first impression in this court. The Supreme Court raised but did not reach the question in *Jim McNeff v. Todd*, 461 U.S. 260, ——, 103 S.Ct. 1753, 1759, 75 L.Ed.2d 830 (1983). In a footnote, the Court said:

It is not necessary to decide in this case what specific acts would affect the repudiation of a prehire agreement— sending notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or, as respondents suggest, precipitating a representation election pursuant to the final proviso in § 8(f) that shows the union does not enjoy majority support.

*Id.* 461 U.S. at ——, n. 11, 103 S.Ct. at 1759, n. 11.

The Ninth Circuit, in the *McNeff* case, also commented on the employer's contention that it had repudiated the prehire agreement.

We need not resolve this [repudiation] issue, however, because it is clear that in this case the employer never repudiated the contract. The only act in the record

which could possibly be argued to be a repudiation is the employer's failure to perform its contractual obligations. While it is clear that in some circumstances noncompliance can be so bald as to put the union on notice of the employer's intent to repudiate (*see, e.g., Higdon*, 88 L.R.R.M. [1067] 1967), the behavior here falls short.

*Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 804 (9th Cir.1982), *aff'd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). In so concluding, the Ninth Circuit observed that, not only had the employer enjoyed the benefits of the prehire agreement by remaining on a jobsite where signing such an agreement was mandatory, but it had misled the union as to its intention to comply with the agreement by falsely reporting that it had employed no covered employees to explain its failure to make contributions to the trust.

A number of district courts have addressed the issue of repudiation of prehire agreements by conduct. The majority of these indicate that mere noncompliance with contractual obligations is insufficient to constitute repudiation. Instead, an affirmative act by the employer is necessary in order to give the union notice of the employer's intent to repudiate or terminate the prehire agreement. *See Chicago District Council of Carpenters Pension Fund v. Skrede*, 542 F.Supp. 634, 638 (N.D. Ill.1982); *Chicago District Council of Carpenters Pension Fund v. Yonan*, 553 F.Supp. 653, 657–58 (N.D.Ill.1982); *Trustees of the Atlanta Iron Workers Local 387 Pension Fund v. Southern Stress Wire Corp.*, 509 F.Supp. 1097, 1105–06 (N.D.Ga.1981).

In *Eastern District Council of the United Brotherhood of Carpenters and Joiners of America v. Blake Construction Co., Inc.*, 457 F.Supp. 825, 831 (E.D.Va.1978), the court held that certain statements were sufficient to repudiate a prehire agreement. There, the president of the employ-

---

5. The notice that Harkins Construction sent to the Union on June 10, 1981 preserved Harkins'

earlier repudiation by conduct, if any had been made.

er-company told union representatives that he was not going to pay union scale as required by the international agreement between the company and the union, and that the job was going to be worked "open shop." *Id.* at 828. The court determined that these statements "were sufficient notice to any reasonable man [sic] that [the company] did not intend to be bound by the international agreement, and that if a contract had existed it was now at an end." *Id.* at 831. Despite its holding that the president's statements constituted sufficient notice, the court also observed that "[b]y not paying the union scale and fringe benefits, and by failing to make use of the union hiring hall, [the employer] repudiated virtually all of its obligations under the agreement." *Id.*

The court in *Cable Guide Railing Construction Co. v. International Association of Bridge, Structural and Ornamental Iron Workers (AFL–CIO), Local Union No. 348*, 543 F.Supp. 405, 407 (W.D.Pa. 1982) relied on *Blake Construction* to hold that notice of an employer's intent to repudiate a prehire agreement may be imparted by conduct. There, the court observed that for nearly two years after the employer signed the prehire agreement, it did not rely upon the agreement to obtain referrals from the union; rather, it openly employed members of another union in compliance with a collective bargaining agreement to which it was a party. *Id.* In addition, the employer failed to comply with the bonding requirements, despite notification from the union that such bonding was necessary under the terms of the prehire agreement. *Id.* Under these circumstances, the court concluded, the union could not claim that the employer "misled it into believing that it would perform its contractual obligations by enjoying the benefits afforded by the

prehire agreement." *Id.* at 408. Thus, the court held that the employer properly repudiated the agreement. *Id.*

■ We conclude from a review of these cases that an employer may repudiate a prehire agreement by conduct. In order to constitute a repudiation, the conduct must be sufficient to put the union and the employees on notice that the agreement is terminated. *See Washington Area Carpenters' Welfare Fund v. Overhead Door Co.*, 681 F.2d 1, 9 n. 38 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983).[6] Whether sufficient notice of termination has been given raises a question of fact that requires an examination of the conduct of all parties. *See Southern Stress Wire, supra,* 509 F.Supp. at 1105. Where the prehire contract itself, as in this case, contains no provision for a formal notice of termination, open and notorious acts by one party, known to the other, which are inconsistent with the continuance of the contract would, in our view, constitute sufficient notice of repudiation. A mere breach of contract ordinarily will not suffice to establish repudiation.

■ Harkins Construction claimed in the district court it repudiated the prehire agreement by conduct prior to June 10, 1981. The district court, however, did not specifically address this issue.[7] In the context of this case, we think this factual issue requires specific resolution by the district court. Accordingly, we vacate the judgment and remand to the district court for a specific finding as to whether Harkins Construction repudiated the prehire agreement by conduct sometime prior to June 10, 1981.

**6.** In concluding that a trust fund could recover unpaid contributions that an employer was required to make under an unrepudiated prehire agreement, the United States Court of Appeals for the District of Columbia Circuit noted that it "need not decide what specific act an employer must make to demonstrate its repudiation of a prehire agreement. The essential point is that the union and employees be put on notice that

the contract is voided." *Overhead Door, supra,* 681 F.2d at 9 n. 38.

**7.** The district court's opinion provided:

This Court has carefully considered each argument advanced by the defendant, as well as the authorities cited in support thereof, and has found such arguments to be without merit.

## C. *Other Allegations of Error.*

 Harkins Construction argues that the district court erred in failing to find that its contractual obligations ceased upon the termination of the 1977–80 Heavy Contractors Agreement, the only collective bargaining agreement in existence on June 1, 1979 that covered Harkins' employees. We disagree. The participation agreement binds Harkins Construction to "the terms and provisions of collective bargaining agreements entered into between [various employer associations, including the Heavy Contractors Association] and [the Union]." The agreement is not limited, by its terms, to any *particular* collective bargaining agreement entered into between the Heavy Contractors Association and the Union. The record shows that the Heavy Contractors Association and the Union executed a new collective bargaining agreement for the years 1980 to 1983. The district court did not err in concluding that the participation agreement required compliance with this new agreement.

 Harkins Construction also contends that the district court erred in finding that work performed by Michael Swanson fell within the terms of the agreement. After reviewing the record, we conclude that sufficient evidence supports the district court's determination that Swanson performed general labor and construction covered by the applicable collective bargaining agreement.

Finally, Harkins Construction argues that the district court erred in finding that work performed in Red Oak, Iowa fell within the terms of the agreement. Neither the district court's opinion nor its ruling on the motion for a new trial addressed this contention. We believe it would be appropriate for the district court to consider this issue on remand.[8]

 In their cross-appeal, the Union and the trusts contend that the district court erred in denying them attorneys' fees.

---

**8.** Although evidence exists in the record indicating that Harkins Construction performed work in Red Oak, Iowa and that Red Oak, Iowa is not located in a county covered by the collective

This contention is without merit in the context of the record in this case.

## III. *Conclusion.*

We vacate the judgment of the district court and remand this case for further proceedings. The district court is instructed to make specific findings as to whether Harkins Construction repudiated the prehire agreement by conduct sometime prior to June 10, 1981, and whether the prehire agreement applies to work performed by Harkins Construction in Red Oak, Iowa. Upon making these additional findings, the district court should enter a new judgment on the merits.

bargaining agreement, we believe it appropriate for the district court to make this determination of fact in the first instance and, if appropriate, to adjust any damage award in the case.