CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, Chicago District Council of Carpenters Welfare Fund, Chicago District Council of Carpenters Apprentice & Trainee Program and the Chicago District Council of Carpenters,

George Vest, Jr., Wesley Isaacson, Milton Holzman, Thomas E. Ryan, Richard S. Pepper, Albert Kaufman, Dominic J. Velo and Herbert S. Church, Jr., as Trustees of the Chicago District Council of Carpenters Pension and Welfare Funds,

Richard S. Pepper, Wesley Isaacson, George Vest, Jr., Thomas D. Coleman, Jack Bornhoeft, Dominic J. Velo, Edward Ellis and Kenneth Borg, as Trustees of the Chicago District Council of Carpenters Apprentice & Trainee Program, Plaintiffs,

v.

Samuel M. YONAN, Individually and d/b/a Yonan Carpets, Defendants.

No. 81 C 2429.

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1982.

---

Hugh J. McCarthy & Associates, Chicago, Ill., for plaintiffs.

Randall T. Mitchell, Adams, Fox, Marcus, Adelstein & Gerding, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, Chicago District Council of Carpenters Pension Fund ("the Fund"), brought this action against defendants, Samuel Yonan and Yonan Carpets ("Yonan"), to collect fringe benefit payments allegedly due the Fund under an agreement entered into in 1975. Jurisdiction is based upon § 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132 (1976). The matter is presently before the Court on cross-motions for summary judgment. For the reasons set forth below, each party's motion will be granted in part and denied in part.

### I.

The undisputed facts are as follows. Yonan, a seller of floor coverings, entered into an agreement with the Chicago District Council of Carpenters ("the Union") in 1975. As part of the agreement, Yonan promised, *inter alia,* to be bound by the terms of current and subsequent collective bargaining agreements between the Union

and Mid-America Regional Bargaining Association ("MARBA"), an employers' bargaining agent. Yonan also promised to abide by the terms of the trust agreements creating the Fund and to make contributions to the Fund as specified in the collective bargaining agreements. Either party could terminate or amend the agreement upon notice as specified.[1]

At the time the agreement was signed, Yonan had three or four employees who installed carpets. Yonan made employee contributions from June, 1976, through October, 1976. After October, 1976, Yonan submitted no monthly contribution reports and made no contributions. Having audited Yonan's books for the period of October, 1978, through March 30, 1980, the Fund contends that Yonan did in fact employ workers covered by the agreement and that contributions are due for the audit period.

## II.

The first issue to be addressed is whether the 1975 agreement is permissible under § 8 of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158. Generally, both a union and an employer commit unfair labor practices under § 8(a) of the Act, 29 U.S.C. § 158(a), if they sign a pre-hire agreement, which is a labor agreement entered into before all employees have been hired and before the union's membership encompasses a majority of the employees. *See Garment Workers v. NLRB,* 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). However, § 8(f) of the Act, 29 U.S.C. § 158(f), provides an exception to this rule. Employers "engaged primarily in the building and construction industry" may enter into pre-hire agreements covering employees that are or will be engaged in construction even if the union has not attained majority status at the time the agreement is executed. *See generally N.L.R.B. v. Local Union No. 103, International Association of Bridge, Structural and Ornamental Iron Workers,* 434 U.S. 335, 344, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978).

1. The agreement provides in full:

THIS AGREEMENT is made in consideration of the mutual promises of the First and Second Parties and the parties do hereby agree as follows:

1. The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION.

2. The parties adopt, and the EMPLOYER agrees to be bound by the terms and conditions of a Collective Bargaining Agreement dated June 1, 1975, between the UNION and Mid-America Regional Bargaining Association as bargaining agent for certain employer associations, a copy of which agreement is attached hereto and made a part hereof and the receipt of which is hereby acknowledged by the EMPLOYER.

3. EMPLOYER agrees to be bound by the terms of the Trust Agreements creating the Chicago District Council of Carpenters Health and Welfare Fund, Chicago District Council of Carpenters Pension Fund, and the Chicago District Council of Carpenters Apprentice Training Fund and all rules and regulations adopted by the Trustees thereof, and agrees to make prompt payments of the per hour contributions provided in the Collective Bargaining Agreement aforesaid, with respect to such Trust Fund.

4. This agreement, and the agreement adopted by reference as aforesaid, shall be in effect as of June 1, 1975, and remain in effect to and including the expiration date of the agreement adopted by reference. This agreement shall continue in effect from year to year thereafter and the parties specifically adopt any agreement entered into between the UNION and Mid-America Regional Bargaining Association, bargaining agent for certain employer associations, subsequent to the expiration date of the agreement adopted by reference as aforesaid, unless notice of termination or amendment is given in the manner provided herein.

5. Either party desiring to amend or terminate this agreement must notify the other with an acknowledgement in writing, at least three calendar months prior to the expiration of the then agreement adopted by reference.

6. EMPLOYER agrees to furnish UNION with certificate of insurance covering liability under the Illinois Workmen's Compensation Act and the Illinois Occupational Disease Act.

7. EMPLOYER agrees to furnish UNION with a surety bond to insure prompt payment of wages, health and welfare fund contributions, pension fund contributions and apprentice training fund contributions in amount and according to the provisions of Article XV of the contract adopted by reference herein.

Yonan contends that his floor covering business is not part of the construction industry and thus the agreement does not fall within the § 8(f) exception permitting pre-hire agreements. Proof submitted by the Fund, however, indicates that the installation of carpet and other floor coverings is considered by various industry organizations to be part of the construction industry.[2] Moreover, the portion of the collective bargaining agreement covering the construction industry explicitly includes as part of the bargaining unit "Wood and Resilient Floor Layers, and Finishers, Carpet Layers. . . ."[3]

■ Although we have found no judicial precedent or legislative discussion of the question, inclusion of Yonan's carpet layers in the § 8(f) construction industry exception comports with the congressional intent underlying the provision. The legislative history of the amendment that excepted the building and construction industry from the prohibition against pre-hire agreements acknowledged two purposes behind the signing of bargaining agreements covering employees before they are hired: (1) it is necessary for the employer to know his labor costs before making the estimate upon which his bid will be based; and (2) the employer must be able to have available a supply of skilled craftsmen ready for quick referral. 1959 U.S.Code Cong. & Ad.News pp. 2318, 2344–45. Furthermore, as noted in the Senate Report, "[r]epresentation elections in a large segment of the industry are not feasible to demonstrate . . . majority status due to the short periods of actual employment by specific employers." *Id.* at 2373, cited in *Iron Workers,* 434 U.S. at 344, 98 S.Ct. at 657. Although Yonan disavows the agreement, his use of occasional labor for the jobs he procures suggests circumstances addressed by Congress in § 8(f) and

justifies the conclusion that the agreement falls within the exception. We therefore reject Yonan's contention that the agreement is invalid as a violation of § 8(a).[4]

### III.

The next issue is whether the agreement is enforceable against Yonan absent attainment by the union of majority status. Yonan contends that a pre-hire agreement is void until the union represents a majority of the employees covered. The Fund argues that the fringe benefit provisions of the agreement are enforceable regardless of whether majority status has been attained.[5]

Yonan relies upon the Supreme Court's decision in *Iron Workers, supra,* 434 U.S. 344, 98 S.Ct. at 657. In *Iron Workers,* the Supreme Court held that it was an unfair labor practice under § 8(a) of the Act for an uncertified majority union to engage in picketing to enforce a pre-hire agreement. *Id.* at 341, 98 S.Ct. at 655. The Court reasoned that although the Act permits labor and management to enter into pre-hire agreements, the use of picketing may hinder employees' freedom to make an uncoerced choice of bargaining agent. *Id.* at 346, 98 S.Ct. at 658.

Yonan attempts to interpret the Court's decision in *Iron Workers* so broadly as to prohibit the legal enforcement of *any* provision of a pre-hire agreement, including fringe benefit obligations. This Court rejected such an interpretation of *Iron Workers* in *Chicago District Council of Carpenters Pension Fund, et al. v. Vest, et al.,* 542 F.Supp. 634 (N.D.Ill.1982), concluding that a distinction exists between the use of tactics that constitute unfair labor practices under § 8(a) of the Act to enforce pre-hire agreements and contract actions to enforce fringe benefit provisions. *Id.,* at 636. Unfair labor practices have the potential to

---

**2.** Isaacson Affidavit at ¶ 3.

**3.** Plaintiff's Exhibit # 3, Area Agreement, June 1, 1976–May 31, 1979, Construction Division, p. 2.

**4.** The Court notes that if Yonan's contention were adopted, Yonan himself would be guilty of an unfair labor practice under § 8(a) of the

Act. *See Garment Workers, supra* 81 S.Ct. at 1607.

**5.** It is undisputed that the union did not at any time represent a majority of Yonan's workers, including both those he terms employees and those he terms independent contractors.

interfere with employees' freedom to choose a bargaining agent, while contract actions to enforce signed agreements do not. *Id.* at 637.

■ Moreover, the existence of a pre-hire agreement renders benefits to the employer, *e.g.,* the ability to project labor costs accurately, *N.L.R.B. v. Irvin,* 475 F.2d 1265, 1267 (3d Cir.1973), and the guarantee of industrial peace at the employer's worksites, *Contractors, Laborers, Teamsters & Engineers Health & Welfare Fund v. Associated Wrecking Co.,* 638 F.2d 1128, 1134 (8th Cir.1981). To refuse to enforce the fringe benefit provisions of a pre-hire agreement would require us to hold all pre-hire agreements unenforceable until majority representation is achieved and would thus permit employers to reap benefits from pre-hire agreements without incurring any reciprocal obligations. *Vest, supra* at 636–37. Thus, we conclude that the agreement is enforceable against Yonan regardless of the union's lack of majority status.[6]

## IV.

Yonan next argues that even if a pre-hire agreement is not void, it is voidable at the election of the employer until majority status is achieved, as the Ninth Circuit has held in *Todd v. Jim McNeff Co.,* 667 F.2d 800, 803–04 (9th Cir.1982), *cert. granted,* —— U.S. ——, 102 S.Ct. 3508, 73 L.Ed.2d

1382, (1982). *Accord, Washington Carpenters' Welfare Fund v. Overhead Door Co.,* 681 F.2d 1, 3 E.B.C. 1600 (D.C.Cir.1982). We need not reach this issue, however, because we conclude from the facts before us that Yonan did not repudiate the agreement during the time period in question.

Yonan contends that because he stopped receiving monthly contribution forms in 1978, two years after he ceased submitting completed forms to the Fund, the Fund was "on notice" that Yonan no longer considered himself party to the agreement.[7] In effect, he asserts that his noncompliance was repudiation terminating his obligations under the agreement. The Ninth Circuit rejected an identical agreement in *McNeff:*

> The only act in the record which could possibly be argued to be a repudiation is the employer's failure to perform its contractual obligations. While it is clear that in some circumstances noncompliance can be so bald as to put the union on notice of the employer's intent to repudiate (*see, e.g., [Iron Workers]* ), the behavior here falls short. It is precisely this sort of action by an employer, enjoying the benefits of a pre-hire agreement and misleading the union as to the employer's intention of never performing his obligations, which has led us to adopt this view of voidability [as opposed to unenforceability] of these contracts.

*District Council of Carpenters Pension Fund v. Sorenson,* No. 80 C 2392 (N.D.Ill. August 24, 1981).

---

**6.** A number of courts have held, as we do here, that fringe benefit provisions of pre-hire agreements are enforceable and that the union's non-majority status is no defense. *See, e.g., Washington Carpenters' Welfare Fund v. Overhead Door Co.,* 681 F.2d 1, 3 E.B.C. 1600 (D.C.Cir. 1982); *Todd v. McNeff, Inc.,* 667 F.2d 800 (9th Cir.1982); *New Mexico District Council of Carpenters v. Mayhew Co.,* 664 F.2d 215 (10th Cir.1981); *Contractors, Laborers, Teamsters & Engineers Health & Welfare Fund v. Associated Wrecking Co.,* 638 F.2d 1128 (8th Cir.1981); *Martin v. Benesh & Bruns, Inc.,* 532 F.Supp. 408 (N.D.Ill.1982).

Other courts have adopted a broad interpretation of *Iron Workers* and held that a pre-hire agreement is not enforceable until the union affirmatively demonstrates majority status. *See, e.g., Baton Rouge Building and Construction Trades Council v. E.C. Schafer Construction Co.,* 657 F.2d 806 (5th Cir.1981); *Chicago*

**7.** Yonan also presents as evidence in support of his argument the fact that the Fund's account sheet covering Yonan was marked "close out" two years after he ceased making payments. The Fund explains that its policy was to so mark account sheets that are inactive for a given time period.

We do not find the markings on the account sheet material with respect to the issue of whether Yonan gave adequate notice pursuant to his contractual obligation. Nor do markings on its account sheets estop the Fund from taking action upon a later discovery that an employer who ceased to make payments actually had employees covered by the collective bargaining agreement.

667 F.2d at 805.[8]  We agree with the Ninth Circuit and, thus, conclude that the agreement was not repudiated during the relevant period.[9]

## V.

The remaining issue is whether Yonan owes contributions to the Fund under the 1975 agreement for the period of October 1, 1978, through March 30, 1980.  Yonan contends that no contributions are due because under the terms of the agreement he was required to make contributions only for *employees*, and during the period in question he hired *independent contractors* rather than employees to install carpet.  The Fund argues first that Yonan's installers were, in reality, employees within the coverage of the agreement,[10] and second, that even if the installers were independent contractors, Yonan was required to make contributions on their behalf pursuant to §§ 3.4 and 3.5 of the collective bargaining agreement.

To determine whether a worker is an employee or an independent contractor, a court must use common law principles of agency to assess and weigh all incidents of the relationship.  *N.L.R.B. v. United Insur-*

*ance Company of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968).  Among the most important of the factors to be considered is the extent of control and supervision retained by the employer.  *Local Union 777, Democratic Union Organizing Committee, Seafarers International Union of North America v. N.L.R.B.,* 603 F.2d 862, 874–75 (D.C.Cir.1978); *Associated Independent Owner-Operators, Inc. v. N.L.R.B.,* 407 F.2d 1383, 1385 (9th Cir.1969).  Upon examination of the uncontested facts respecting Yonan's relationship with his carpet installers, we hold that the workers were independent contractors and not employees.[11]

The Fund·contends that Yonan is nevertheless required to make contributions on behalf of installers who are independent contractors pursuant to §§ 3.4 and 3.5 of the collective bargaining agreement.  The collective bargaining agreement in effect at the signing of the 1975 pre-hire agreement contained § 3.4, which requires a signatory employer who subcontracts work to another signatory employer responsible for contributions if the subcontractor does not make payments.[12]  To establish Yonan's liability

**8.**  Yonan's argument that his failure to comply constituted notice to the Fund is in fact weaker than the employer's argument in *McNeff*.  In *McNeff,* the Court was faced with the question of what constituted repudiation.  In the instant case, the agreement itself specified the notice required to amend or terminate.  *See* note 1, *supra,* Agreement at ¶ 5.

*See also N.L.R.B. v. R.J. Smith Construction Company, Inc.,* 545 F.2d 187 (D.C.Cir.1976), in which the Court rejected defendant's contention that its pleadings filed with the N.L.R.B. in enforcement proceedings had the effect of terminating its pre-hire agreement.  As in the instant case, the agreement explicitly required written notice of termination three months in advance of the expiration of the collective bargaining agreement.

**9.**  Yonan sent written notice of intent to terminate to the Fund in August, 1981.  We need not decide whether this notice was effective to terminate Yonan's obligations, since the Fund seeks contributions due for October, 1978, through March 30, 1980.  *See* p. 655, *supra.*

**10.**  On October 21, 1981, this Court denied a motion by Yonan for summary judgment due to the lack of factual support for a finding that the installers were independent contractors and not

employees.  Subsequent to that opinion and in support of the motions now before the Court, the parties have submitted proof in the form of affidavits and depositions sufficient to support a summary judgment ruling.  *See Cedillo v. International Association of Bridge and Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979).

**11.**  It is undisputed that the installers, *inter alia:* performed their installation work without supervision by Yonan;  maintained their own time records;  could and did turn down jobs offered them by Yonan;  maintained their own insurance and drove their own vehicles;  could and did perform work for competitors of Yonan, and did not display Yonan's name on their clothing or vehicles.

**12.**  Section 3.4, in effect at the time of and at all times subsequent to the signing of the pre-hire agreement, provides:

Any EMPLOYER who sublets any of the work coming within the jurisdiction of Carpenters shall assume the obligations of any sub-contractor to the extent of Carpenters labor employed on work under contract with the EMPLOYER for prompt payment of Em-

for contributions due under § 3.4, then, the Fund would have to show: (1) that the installers to whom work was contracted were signatory employers, and (2) that the installer/subcontractors did not make the contributions required of them as signatory employers. Such facts have been neither alleged nor proven by plaintiff.[13] Thus, liability cannot be predicated on § 3.4.

Section 3.5, added to the collective bargaining agreement on June 1, 1979, provides that an employer is liable for payments on behalf of subcontractors whether or not they are signatories to the agreement.[14] Yonan contends that he is not bound by this provision, because it was a modification to the collective bargaining agreement adopted by reference in the 1975 pre-hire agreement, and because he never received notice of the modification.

■ The pre-hire agreement signed by Yonan in 1975 provided that it would remain in effect from year to year absent proper notice by either party, and that it adopted by reference the collective bargaining agreement in effect at the date of signing *as well as any subsequent agreement* between the Union and MARBA.[15] Substantially identical "roll-over" provisions have been upheld and enforced. *See, e.g., Construction Teamsters Health & Welfare Trust v. Con Form Construction Corp.,* 657 F.2d 1101 (9th Cir.1981); *Ted Hicks & Associates, Inc. v. N.L.R.B.,* 572 F.2d 1024 (5th Cir.1978). Moreover, the pre-hire agreement does not condition adoption of subsequent collective bargaining agreements on notice to the employer. Yonan cannot now insert a new provision into the pre-hire agreement, *i.e.,* a requirement of notice. *Accord, Ted Hicks, supra* at 1026. He is obligated to make contributions for the independent contractors he employed during the audit period after § 3.5 was added to the collective bargaining agreement.

For these reasons, we hold that Yonan is entitled to summary judgment in his favor with respect to the Fund's claim for contributions arising from dates prior to June 1, 1979; the Fund's motion for summary judgment is denied with respect to the period prior to June 1, 1979. The Fund's motion is granted, and Yonan's motion is denied, with respect to contributions arising from the period between and including June 1, 1979, and March 30, 1980. It is so ordered.

---

ployee's Wages, Health and Welfare, Pension and Apprentice Training Contributions, including reasonable attorney fees incurred in enforcing the provisions hereof, provided the sub-contractor is not bonded as provided for in Article XV hereof. The UNION will, upon written request, furnish written certification to any EMPLOYER as to whether a sub-contractor is adequately bonded including expiration date of bond, and that wages and payments to Health and Welfare, Pension and Apprentice Contributions are current.

13. In the unlikely event that, if the record before the Court is incomplete and, because of such circumstance, our view that the clear implication from the record that the prerequisites of § 3.4 were not met is erroneous, this fact may be documented in a motion to reconsider.

14. Section 3.5 provides:

If an EMPLOYER, bound by this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the job site of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the EMPLOYER shall require such subcontractor to be bound by all the provisions of this Agreement, or the EMPLOYER shall maintain daily records of the subcontractor's or the subcontractor's Employees job site hours and be liable for payments to the Chicago District Council of Carpenters Welfare Fund, the Chicago District Council of Carpenters Pension Fund, and the Chicago District Council of Carpenters Apprentice and Trainee Program, as provided in Articles XII, XIII, and XIV of this Agreement.

15. *See* note 1, *supra,* Agreement at ¶ 4.