RAILROAD MAINTENANCE LABORERS' LOCAL 1274 PENSION, WELFARE AND EDUCATION FUNDS, Plaintiff,

v.

KELLY RAILROAD CONTRACTORS, INC. and The Rails Company, a corporation and Robert Mitchell, Defendants.

No. 82 C 6565.

United States District Court, N.D. Illinois, E.D.

June 26, 1984.

Charles A. Linn, Arnold & Kadjan, Chicago, Ill., for plaintiff.

Roger J. Miller, Nelson & Harding, Omaha, Neb., Arthur Smith, Robert P. Casey, Vedder, Prine, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This matter is before the court on a motion to dismiss, or in the alternative, for summary judgment brought by defendants Kelly Railroad Contractors, Inc. (Kelly), the Rails Company (Rails) and Robert Mitchell (Mitchell). Plaintiff Railroad Maintenance Laborers' Local 1274 Pension, Welfare and Education Funds (Funds) seeks to enforce the payment of contributions to various fringe benefit trust funds created pursuant to a collective bargaining agreement negotiated between Kelly and Local 1274.

Kelly and Local 1274 executed a collective bargaining agreement on March 7, 1978 which required Kelly to make contributions to the Funds on behalf of certain employees. Kelly made these contributions continuously from March 1978 through May 1982. The Rails was incorporated on February 18, 1979. It purchased all assets and liabilities of the Kelly branch office in Bellevue, Nebraska in January 1982. Rails, operating out of Kelly's Bellevue office, contributed to the Funds from February 1980 through June 1981, although it was not a signatory to the bargaining agreement signed by Kelly and Local 1274. Both companies also filed periodic report forms with Local 1274 in accordance with the bargaining agreement.

Plaintiff seeks damages in the amount due plus interest and asks the court to order defendants to submit their books and records to plaintiff for an audit and to enjoin defendants from wilfully violating the terms of the collective bargaining agreement and the trust instruments by failing to make timely payments to the Funds. Defendants seek dismissal of plaintiff's claim on the ground that plaintiff has failed to state a claim upon which relief can be granted since neither Rails nor Mitchell was a signatory to the bargaining agreement which incorporated the trust instrument. They also maintain that assertion of jurisdiction by this court over the instant case would result in an improper encroachment upon an area of law that is within the exclusive or primary jurisdiction of the National Labor Relations Board (Board), as defined by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* Additionally, defendants claim that Mitchell cannot be held personally liable for the alleged obligations of Rails merely because he is an officer of the corporation.

In the alternative, defendants seek summary judgment. Rule 7(b) of the Federal Rules of Civil Procedure require that every motion specify the grounds and the relief, or order sought, "with particularity." De-

fendants have failed to state the grounds for their summary judgment motion and, therefore, this decision will be limited to a review of the issues raised by defendants' motion to dismiss.

## DISCUSSION

### I. *Jurisdiction*

The threshold question in this case is whether this court has subject matter jurisdiction to consider the liability of one corporation for the collective bargaining obligations entered into by another. Plaintiff predicates federal subject matter jurisdiction over this action on Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) and Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132.

Section 301(a) of the LMRA[1] gives federal courts jurisdiction over actions based upon violations of labor contracts by parties to such contracts. Section 502 of ERISA authorizes a participant in, or fiduciary of, a welfare or pension benefit trust to bring a civil action in federal district court to recover benefits due him under the Act. 29 U.S.C. § 1132(a)(3)(B)(ii).

### A. *Section 301 Claims Against Kelly*

■ A Section 301 claim must satisfy three requirements before it can be asserted in federal court: (1) a claim of a violation of (2) a contract (3) between an employer and a labor organization. 29 U.S.C. § 185(a). *See also Loss v. Blankenship*, 673 F.2d 942 (7th Cir.1982). All three of these requirements seem to be met with respect to Kelly. All the parties to this action agree that Kelly signed the collective bargaining agreement with Local 1274 and that Kelly was an employer of the union's membership. Furthermore, the basis of plaintiff's suit is an allegation that

Kelly violated the collective bargaining agreement.

The only relevant inquiry, therefore, as to Kelly, is whether Kelly was in breach of contract by ceasing to make contributions to the Funds. *See Oil, Chemical and Atomic Workers v. Standard Oil Co. of Indiana*, 529 F.Supp. 184 (N.D.Ill.1981). Section 301 is the statutory mechanism for vindicating contract rights under a collective bargaining agreement. *Cappa v. Wiseman*, 659 F.2d 957, 959 (9th Cir.1981). *See also Todd v. Casemakers, Inc.*, 425 F.Supp. 1375 (N.D.Ill.1977). Plaintiff claims such a breach. Accordingly, defendants' motion to dismiss as to Kelly is denied.

### B. *Section 301 Claims Against Rails*

Plaintiff concedes that Rails did not sign the collective bargaining agreement at issue in this case. It urges this court, however, to hold that it has stated a claim under Section 301 of the LMRA for breach of the terms of the agreement by Rails, a non-signatory to the agreement, on the basis of the single employer doctrine or the alter ego doctrine as developed by the Board in unfair labor practice proceedings under the NLRA. As noted by plaintiff, a number of courts have used these theories to explore the liability of a non-signatory party for the contractual obligations assumed by a related signatory corporation. *See e.g., Carpenters Local Union No. 1846 v. Pratt-Farnsworth*, 690 F.2d 489, 505 (5th Cir.1982), *reh'g en banc denied*, 696 F.2d 996 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983) (*Pratt Farnsworth*); *Metropolitan Detroit Bricklayers District Council, International Union of Bricklayers and Allied Craftsmen, v. J.E. Hoetger & Co.*, 672 F.2d 580, 584–85 (6th Cir.1982); *Local Union No. 59, International Brotherhood of Electrical Workers v. Namco Electric,*

---

1. Section 301(a) states:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought

in any district court of the U.S. having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

*Inc.*, 653 F.2d 143, 146–47 (5th Cir.1981); *Russom v. Sears, Roebuck and Co.*, 558 F.2d 439 (8th Cir.1977). For the reasons stated below, this court finds that it has jurisdiction over plaintiff's claims based on either of these doctrines.

### 1. *Single Employer Doctrine*

■ Under the single employer doctrine two or more related enterprises are treated as one employer within the meaning of Section 2 of the NLRA. Factors relied on to determine the existence of single employer status are (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam). The focus is on whether there is an absence of an "arm's-length relationship found among unintegrated companies." *NLRB v. Don Burgess Construction Corp.*, 596 F.2d 378, 384 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979), *quoting Local 627, International Union of Operating Engineers v. NLRB*, 518 F.2d 1040, 1045–46 (D.C.Cir.1975), *aff'd on this issue sub nom, South Prairie Construction Co. v. Local 627 International Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (*Peter Kiewit*).

■ Upon finding that two employers constitute a single employer for the purposes of enforcing a collective bargaining agreement, a further determination as to whether the employees of both employers constitute an appropriate bargaining unit must be made. A union contract signed by one employer will not bind both employers under this doctrine unless the employees of both employers constitute a single bargaining unit. *See Pratt-Farnsworth, supra,* 690 F.2d at 505; *Don Burgess, supra,* 590 F.2d at 386.

In most cases the Board has the responsibility and authority to make bargaining unit determinations. The primary motivation of the Board in making this determination is the protection of the employees' rights to bargain collectively with a representative of their own choosing. 29 U.S.C. § 159(b). In most cases such as this, however, where there is a successor employer whose rights and obligations under a collective bargaining agreement to which he is not a party are in question, the Board's exclusive jurisdiction to determine the appropriate unit has been questioned.

The major cases relied on by defendants are among those in which the courts have found the Board to have primary jurisdiction over unit determinations. An analysis of these cases, however, indicates that the facts of those cases in which the court's jurisdiction is denied can be readily distinguished from those in which the court's jurisdiction to determine successorship rights and obligations has been upheld. In *Oil, Chemical and Atomic Workers v. Standard Oil Co. of Indiana*, 529 F.Supp. 184 (N.D.Ill.1981), the issue was whether a successor union could enforce a collective bargaining agreement. As noted by the court, the issue of union successorship is solely a question of representation. *Id.* at 185. It does not raise a breach of contract question. In fact, the *Standard Oil* court even made note of the "well-settled" rule that under Section 301 disputes involving collective bargaining agreements which also raised issues traditionally within the Board's jurisdiction, such as alleged unfair labor practices, could remain in federal court. *Id.* at 185 n. 2.

In *Local No. 3–193 International Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295 (9th Cir.1980), a union representing employees in one logging operation and an employer had signed a collective bargaining agreement. During the life of the agreement the employer opened several other logging operations which were geographically distinct, had no interchange of employees and were autonomously operated by subsidiary corporations. *Ketchikan Pulp, supra,* at 1297. The court held that the issue was solely one of representation and that the accretion of new employees without an election to determine majority

status would threaten a usurpation of Section 7 rights. *Id. Ketchikan Pulp* exemplifies the classic representational situation in which the Board's expertise is needed to protect the rights of employees to bargain collectively with a representative of their own choosing. The new employees in *Ketchikan Pulp* had not participated in the bargaining process or in choosing a representative. In this case, however, there are no new employees and no separate and distinct employer operations. Because the unit remains the same there has been no usurpation of the employees' Section 7 rights.

The third case in the line of cases that upholds the jurisdiction of the Board to resolve questions of successor obligations is *South Prairie Construction Co. v. Local No. 627 International Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976), referred to as *Peter Kiewit*. In *Peter Kiewit* there were two separate companies and two separate employee groups, one unionized and one not unionized. The issue was whether or not the collective bargaining agreement should extend to the non-union employee group based on a finding of single employer status between two related employers. The *Peter Kiewit* case, however, can be viewed as an administrative law case which does not require the courts to defer to the Board in all cases raising the issue of the single employer doctrine. *Pratt-Farnsworth, supra*, 690 F.2d at 514. Because the question of joint employer status had already been before the Board in *Peter-Kiewit*, the court followed the "time honored principle relating to appellate review of an agency determination." *Pratt-Farnsworth, supra*, at 514. Such a review is limited to matters actually decided by the agency. Courts in this circuit recognize the validity of this principle. *See e.g., Borden, Inc. v. FTC*, 495 F.2d 785 (7th Cir.

1974) (It is well settled that ordinarily courts will not interfere with an agency until it has completed its action...."); *Strusiner v. Perlin*, 478 F.Supp. 464 (N.D. Ill.1979).[2]

The second line of relevant cases are those in which the jurisdiction of the court to decide successor employer obligations has been upheld. One of this line is *Pratt-Farnsworth*, which involved a suit by two unions and three employee benefit funds alleging non-compliance with a collective bargaining agreement by a signatory employer and a non-signatory employer. Plaintiffs maintained that the two employers constituted a single employer and were therefore both bound by the terms of the collective bargaining agreement. The court made a detailed analysis of the doctrines relied upon by the plaintiff in the instant case, the single employer doctrine and the alter ego doctrine, and specifically held that Section 301 confers jurisdiction on the federal courts to decide whether one employer is bound to a collective bargaining agreement executed by another even where a determination of the appropriate bargaining unit—a decision usually within the province of the Board—is necessary as a preliminary matter. *Pratt-Farnsworth, supra*, 690 F.2d at 522. In resolving the single employer question the Fifth Circuit focused on the strong commitment to judicial enforcement of contractual rights embodied in Section 301 and the ability of the courts to protect the rights of employees to bargain with a representative of their own choosing.

This commitment to judicial enforcement of contractual rights embodied in Section 301 is so great that the Supreme Court has upheld the jurisdiction of the federal courts under Section 301, even where the alleged breach of a collective bargaining agree-

---

2. *See also Yellow Freight System, Inc. v. Automobile Mechanics Local 701 International Assoc. of Machinists*, 684 F.2d 526 (7th Cir.1982); *Chicago Area Vending v. Local Union No. 761*, 564 F.Supp. 1186 (N.D.Ill.1983). In *Yellow Freight*, the court dismissed the case relying on the fact that there had already been an initial determi-

nation of the case by the Board. *Id.* at 530. In *Chicago Area Vending*, the court noted that an alternative remedy before the Board did not prevent a suit for enforcement of a collective bargaining agreement where no proceeding was before the Board. *Id.* at 1192.

ment was also an unfair labor practice—an area traditionally within the exclusive jurisdiction of the Board. *Pratt-Farnsworth, supra,* 690 F.2d at 517–18, *citing Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). *Accord, Wm. E. Arnold Co. v. Carpenters District Council,* 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974); *Smith v. Evening News Assoc.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Furthermore, the Supreme Court has held that Congress directed the federal courts to create a federal common law of contract, fashioned from the policy of our national labor laws, applicable to collective bargaining agreements. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). As noted by the court in *Pratt-Farnsworth,* the most fundmental question in a contract suit is who is bound by the contract.

> To say that the courts and not the Board are solely entitled to pass upon contractual disputes and at the same time to deny the courts the power to determine in a fashion consistent with our national labor laws the identity of the persons or entities obligated by the contract is self-contradictory. If anything, the power to enforce a contract must necessarily include the ability to decide who is bound by the contract.

*Pratt-Farnsworth,* 690 F.2d at 518.

Courts in this circuit have also retained jurisdiction over cases in which an issue was raised which was arguably within the jurisdiction of the Board. In a trademark action brought under the Lanham Act and the LMRA, the Seventh Circuit held that although the activity that was the basis of the suit might have been protected by or prohibited by certain sections of the LMRA, this possibility was not sufficient to preempt the jurisdiction of the court over the employer's trademark action. *Marriott Corp. v. Great America Service Trades Council,* 552 F.2d 176, 180–81 (7th Cir.1977), *quoting Connell Construction Co. v. Plumbers Local Union No. 100,*[3] 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975). The court noted that "Federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." *Marriott, supra,* at 180. ERISA provides the independent federal remedy in this case. In fact, it has been noted that the national labor policy favoring enforcement of contracts applies "with even greater force to protecting the interests of beneficiaries of a welfare fund...." *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 470, 80 S.Ct. 489, 496, 4 L.Ed.2d 442 (1960), *quoted by Martin v. Benesh & Bruns, Inc.,* 532 F.Supp. 408, 412 (N.D.Ill.1982).

Additionally, the Seventh Circuit has held that a district court has jurisdiction to determine what entity constitutes the "employer" for purposes of liability under a collective bargaining agreement. *Baker v. Fleet Maintenance, Inc.,* 409 F.2d 551, 554 (7th Cir.1969). Thus, where the determination of the appropriate bargaining unit is merely a preliminary step in an enforcement proceeding properly brought under Section 301, the court may determine the entities bound by the contract. *Railroad Maintenance Laborer's Local 1274, Pension, Welfare and Education Funds v. Western Railway Builders, Inc.,* No. 82 C 2537, sl. op. at 2 (N.D.Ill.1983) (Bua, J.).[4]

█ The issue in this case is Rails' contractual obligations to its employees, not what unit is appropriate to represent those employees. The unit, which was deter-

---

**3.** *Connell Construction Co.,* relied on by *Pratt-Farnsworth,* involved a labor dispute brought under the antitrust laws.

**4.** *See also Chicago District Council of Carpenters Pension Fund v. Yonan,* 553 F.Supp. 653 (N.D. Ill.1982) (Aspen, J.), *Martin v. Benesh & Bruns, Inc.,* 532 F.Supp. 408 (N.D.Ill.1982) (Marshall, J.) These are pre-hire agreement cases in which suit was brought to compel the employer to make fringe benefit payments allegedly due under the agreements even though the unions lacked majority status. Both courts required enforcement of the agreement without a Board determination of majority status in view of the fact that enforcement would not pose any significant threat to the employees' right to choose a bargaining agent.

mined when Local 1274 and Kelly entered into the relevant agreement, has not changed. The employees, the work they do, their place of employment, their customers and their manager (Mitchell) remain the same. Thus, there is no threat of interference with the Section 7 rights of the employees. Focusing on the relevant case law and policy considerations enumerated above, this court agrees with the *Pratt-Farnsworth* analysis of the single employer doctrine and expressly follows the reasoning of the Fifth Circuit as a basis for denying defendants' motion to dismiss.

### 2. *Alter Ego Doctrine*

■ The finding of an alter ego successor does not require a second separate finding that the unit is appropriate beyond a very limited determination that the unit is not repugnant to any policy embodied in the NLRA. *Hageman Underground Construction,* 253 NLRB 60, 70 (1980). Therefore, the jurisdictional issue raised by defendants is not germane to alter ego cases.

■ The focus of an alter ego determination is whether the new company merely represents a disguised continuance of the old company or whether it is an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations. *Southport Petroleum Co. v. NLRB,* 315 U.S. 100, 62 S.Ct. 452, 86 L.Ed. 718 (1942). *See also Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974). Important factors to consider are whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervisors and ownership. *Hageman, supra.* The substantial continuity of the work force is frequently a major issue in alter ego determinations. *Hageman, supra; Crawford Door Sales Co.,* 226 NLRB

1144, 1150 (1976). Because a finding that one employer is the alter ego of another implies that the two are in reality the same employer, the alter ego successor is subject to all of the legal and contractual obligations of the predecessor. *See Howard Johnson Co., supra,* at 259, 94 S.Ct. at 2242; *Pratt-Farnsworth, supra,* at 509, *Hageman, supra,* at 68.

■ As noted earlier, in the instant case the work force appears to be almost identical, as are management, customers, place of employment and equipment. Accordingly, since plaintiff had pled both relevant doctrines along with facts which tend to support one or both of these doctrines and which would entitle plaintiff to relief if proven true,[5] plaintiff's case states a claim and plaintiff must be given a chance to present its case.

### 3. *Implicit Assumption of the Agreement*

■ Adding further support to the decision of this court to retain jurisdiction over plaintiff's claims is the fact that the pleadings also raise the issue of whether Rails and Mitchell assumed the collective bargaining agreement between Local 1274 and Kelly. Where the successor implicitly recognizes the existence of and assumes the obligations of an agreement through a "consistent pattern of conduct conforming to the terms of the agreement," a determination as to whether the successor is a joint employer or alter ego becomes unnecessary. *See Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 763 (9th Cir.1981). To make such a finding the court must engage in a *de novo* review to determine whether the facts support such an assumption of obligation. *See Local 92 v. Strabley Building Supply, Inc.,* 98 LRRM 3025 (N.D.Ohio, 1978). Such a review is warranted by the facts pled and therefore dis-

---

5. Under *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), there can be no dismissal unless it appears that beyond a doubt plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Accord, Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981).

Furthermore, plaintiff need not set out in detail the specific facts upon which a claim is based. He must merely give defendant fair notice of what the claim is and the grounds upon which it rests. 355 U.S. at 46–47, 78 S.Ct. at 102–103.

missal as to Rails and Mitchell would be improper at this time.

## II  *Personal Liability of Mitchell*

As noted by defendants, it is a well recognized principle of law that directors and officers of a corporation are not liable for corporate acts and debts merely because of their official relation to the corporation.  19 Am.Jur.2d, *Corporations,* § 1341 (1965).  Plaintiff is not, however, attempting to impose liability on Mitchell merely because as president he stands in close relation to the corporation.  Instead, plaintiff maintains that Mitchell's liability stems from the trust agreements incorporated into the collective bargaining agreement.  The trust agreement imposes personal liability for any underpayment on any officer or director who supervised or had personal knowledge of the reporting procedure and who wilfully violated any of the trust agreement provisions.  Plaintiff has pled facts in support of such a wilful violation and therefore must be given an opportunity to prove the merits of its claim.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied.