### CHICAGO TYPOGRAPHICAL UNION NO. 16, Plaintiff,

v.

### CHICAGO TRIBUNE COMPANY, Defendant.

No. 86 C 1998.

United States District Court, N.D. Illinois, E.D.

Aug. 22, 1986.

---

Gilbert A. Cornfield, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Gerald F. Lutkus, Isham, Lincoln & Beale, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Chicago Typographical Union No. 16 ("the Union") filed this action under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1982),[1] against defendant Chicago Tribune Company ("the Tribune") for the alleged breach of a supplemental agreement containing certain job security clauses for composing room employees. The Tribune has submitted a motion to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, that motion is denied.

### FACTUAL ALLEGATIONS

This suit arose from a long-standing labor dispute between the Tribune, publisher of a Chicago daily newspaper, and the Union, which represents composing room employees working for the Tribune. As alleged in the complaint, the Union is a "labor organization" within the meaning of Section 301, and the Tribune is an "employer" under that section. In 1975, the two parties entered into a contract called a "Supplemental Agreement." By its own terms, the Supplemental Agreement provided that it was "ongoing *and* part of all future collective bargaining Agreements ..." (emphasis added). Furthermore, its terms stated that it could not be amended except by mutual consent of the two parties. The Supplemental Agreement also contains a Job Security Clause which reads in part as follows:

> The Offices agree that all composing room employees at the Chicago Tribune Company and at Field Enterprises, Inc., Newspaper Division, whose names appear on the Job Security Lists, will be retained in the employment of the Publishers in accordance with accepted rules

---

1. That provision states:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**594**

governing situation holders for the remainder of their working lives unless vacating situations through retirement, resignation, death, permanent disability or discharge for cause. In the case of a strike or lockout, such employment guarantee shall be suspended for the duration of such actions, but will be resumed immediately upon settlement of the strike or lockout. . . .

On July 18, 1985, the Union called a work stoppage over issues relating to hours, wages and working conditions. The Supplemental Agreement had remained in effect until that date. On February 10, 1986, the Union terminated the work stoppage by making an unconditional offer on behalf of the striking union members to return to active employment. The Union and its representatives put the Tribune on notice that it expected that striking employees be returned to their positions and that the termination of the strike put the Job Security Clause of the Supplemental Agreement back into effect. The Tribune has returned fifty of the striking workers to their positions and has promised to return thirteen more. However, it has not given back the remainder of the striking composing room employees their positions.[2] The Union complains that the Tribune's refusal to immediately return the remaining employees to work is in direct violation of the job guarantees embodied in the Supplemental Agreement. Thus, the Tribune has allegedly violated a contract between itself and a labor organization such that an action under Section 301 is appropriate. *See* 29 U.S.C. § 185(a) (1982). Among the relief sought by the Union is a declaration of the rights of its members under the contract, an order requiring the Tribune to reinstate the striking employees and damages compensating these employees for the wages and benefits lost since the strike was called to an end by the Union.

## SUBJECT MATTER JURISDICTION

 The Tribune moves on two grounds for a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). First, it contends that the Union's allegations are essentially unfair labor practice charges which should be brought before the National Labor Relations Board ("NLRB") pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157–158 (1982). In a largely irrelevant discussion, the Tribune argues that the Union's complaint should be within the exclusive jurisdiction of the NLRB because of the importance of promoting federal labor policy interests and avoiding conflicting decisions from different adjudicatory bodies. It relies heavily on the doctrine first established in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), regarding federal preemption of certain state law causes of action where the NLRB's authority to regulate labor practices would otherwise be impaired. Nonetheless, the Tribune ignores the fact that this action was brought under Section 301 of the LMRA and, as such, enjoys an exception from the *Garmon* preemption doctrine. *William E. Arnold Co. v. Carpenters District Council of Jacksonville,* 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974); *Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge,* 403 U.S. 274, 298, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971); *Railroad Maintenance Laborers' Local 1274 Pension, Welfare and Education Funds v. Kelly Railroad Contractors, Inc.,* 591 F.Supp. 889, 894–95 (N.D.Ill.1985). These cases all hold that even if a plaintiff is complaining about conduct that is arguably protected or prohibited by the NLRA, if that conduct is also an alleged violation of a contract under Section 301, the federal courts have jurisdiction to adjudicate the dispute. *Id.* The courts have long recognized the importance of labor policy interests protected by the enforcement of collective bargaining agreements in federal court under "the usual processes of the law" rather than through the administrative pro-

---

**2.** According to the complaint, a total of 163 journeymen and substitute journeymen who were on strike have not yet been returned to their positions.

cess. *See, e.g., William E. Arnold Co.,* 417 U.S. at 16, 94 S.Ct. at 2072. Accordingly, we reject the Tribune's first ground for dismissal.

■ Next, the Tribune raises an equally unpersuasive subject matter jurisdiction argument. It contends that the Supplemental Agreement expired because it was part of another collective bargaining agreement which had expired by its own terms in January 1985. Thus, the Tribune maintains, there is no contract in existence to enforce under Section 301, and the court lacks subject matter jurisdiction to hear the cause. We disagree. The Union has alleged the existence of an ongoing agreement between the parties which is being violated by the Tribune's failure to return striking employees to their former positions. Despite the Tribune's insistence that the contract is no longer in effect, this Court has jurisdiction under Section 301 to determine whether the contract exists. *International Union of Elevator Constructors v. Home Elevator Co., Inc.,* 613 F.Supp. 253, 255 (S.D.Ind.1985), *rev'd on other grounds,* 798 F.2d 222 (7th Cir.1986). Accordingly, we deny the Tribune's motion to dismiss on this ground as well.

### FAILURE TO STATE A CLAIM

■ For the purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court assumes the well-pleaded factual allegations of the complaint to be true and views them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Furthermore, the motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). In the present case, the Union has pled that the Supplemental Agreement is in effect and is being violated by the Tribune's continued refusal to reinstate the striking employees. The Tribune argues in response that the complaint should be dismissed for failure to

state a claim because the Job Security Clause does not protect the composing room employees as the Union asserts. In support of this argument, the Tribune points to the language of the Clause which provides that "[i]n the case of a strike or lockout, such employment guarantee shall be suspended for the duration of such actions, but will be resumed immediately upon settlement of the strike or lockout." The Tribune contends that this language permits the suspension of all union employee rights for the duration of the strike and that "[i]t does not in any way limit the right of the Company to hire permanent replacements." Memorandum in Support of Defendant's Motion to Dismiss at 17. Furthermore, it maintains that even if the lifetime employment guarantee took effect again upon the Union's unconditional offer to return to work, all employment actions taken by the Tribune with respect to the strikers were completed during the period when the employment rights were suspended due to the strike.

We cannot agree with the Tribune that it appears beyond doubt that the Union can prove no set of facts to sustain its claim under the Supplemental Agreement. Even if the employment guarantee rights were suspended during the work stoppage, the terms of the Supplemental Agreement state unequivocally that the guarantee is *immediately* resumed upon settlement of any strike. Thus, while it appears that the Tribune could hire workers to replace the striking composing room employees during the course of the strike, the terms of the Supplemental Agreement also seem to guarantee lifetime employment rights to employees following the settlement of the strike. Furthermore, it is not the hiring of the replacement workers during the strike which the Union complains is a breach of the Agreement, but the refusal to reinstate the returning employees upon the strike's termination. Hence, the Tribune's argument that the Agreement in no way prohibits it from hiring replacement workers is not dispositive and does not foreclose any claim the Union might have that the Agree-

ment was breached.[3] As a result, we hereby deny the Tribune's motion to dismiss for failure to state a claim.

## CONCLUSION

In accordance with the above opinion, the Court hereby denies the Tribune's motion to dismiss both on the grounds of subject matter jurisdiction and on the purported failure to state a claim. It is so ordered.

---

3. The Tribune argues that it had the right to hire "permanent replacements" for the striking employees since the employment guarantee was not in effect during the work stoppage. "Permanent replacements" is a specialized term in the field of labor law referring to workers who are hired to replace employees engaged in an "economic strike." *Belknap, Inc. v. Hale,* 463 U.S. 491, 493, 103 S.Ct. 3172, 3174, 77 L.Ed.2d 798 (1983). These replacements do not *have* to be discharged when striking employees return to work, although they *can* be dismissed if the employer so agrees with the collective bargaining agent for the striking employees. *See, e.g., id.* at 503, 103 S.Ct. at 3179. In any event, this argument is entirely inappropriate at this stage of the litigation on a 12(b)(6) motion where the Court is confined to reviewing the complaint purely for legal sufficiency based on the allegations contained therein. Accordingly, we do not address this question.